FRANCIS N. TROMBLEY *vs.* HAROLD V. LANGLOIS, *Warden.*

JULY 21, 1960.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

ROBERTS, J.  This is a petition for a writ of habeas corpus directed to the warden of the adult correctional institutions where the petitioner is now confined pursuant to a sentence imposed by a justice of the superior court after a jury found him guilty of the crime of breaking and entering.  The petitioner alleges in his petition that he is being unlawfully and illegally detained and deprived of his liberty and freedom as guaranteed to him by the constitution of the state of Rhode Island and the constitution of the United States, and requests that he should be forthwith dismissed and discharged from the custody of the warden.

There is no substantial dispute concerning the material facts in this case.  After indictment by the December 1957 grand jury for Providence county, petitioner was arraigned and released on bail.  A trial was thereafter commenced on January 28, 1958.  On February 4, 1958, after the state had completed the presentation of its case, petitioner failed to appear, and the trial justice thereupon continued the trial until February 6, 1958.  At that time, petitioner still not appearing, the case was again continued until February 10, 1958.  On February 10, petitioner still being absent, the trial justice gave his attorney the opportunity to proceed with the case.  The petitioner's attorney decided to stand mute and declined to proceed with the case or to rest.  In this circumstance the prosecution declined to make a closing argument to the jury.  Thereupon the trial justice charged the jury who, after deliberating on the case, returned a verdict of guilty.  The petitioner was sentenced to a term of ten years in the adult correctional institutions.

The petitioner's failure to appear at his trial was the subject of a story published on February 4, 1958 in a local newspaper, which read in part: "Francis N. Trombley * * * who has been in the State's crime news the past decade

* * *." When the trial justice on February 10, 1958 directed that petitioner's counsel proceed with the defense, he moved for a mistrial, contending that the published account of petitioner's absence and, in particular, the above-quoted language had prejudiced his case with the jury. The trial justice denied this motion, and petitioner's counsel thereupon moved that the jurors be polled for the purpose of ascertaining whether any of them had read the news item in question and, if so, had been thereby prejudiced against petitioner. This motion was also denied by the trial justice. However, in charging the jury he gave them a cautionary instruction to disregard and ignore anything they might have read in the press concerning the case, and to base their verdict entirely on the evidence produced at the trial and the law as given to them by him.

The petitioner contends that in proceeding with the conduct of any part of the trial in his absence and, in particular, to have charged the jury and to have received from them a verdict as to his guilt constituted an invasion of rights guaranteed him under article I, sec. 10, of the constitution of the state of Rhode Island and of article XIV of amendments to the constitution of the United States. The petitioner further contends that these same rights guaranteed him by both the state and federal constitutions were violated by the denial by the trial justice of his motion for a mistrial because of the publication of the news item set forth above and the denial of his motion to poll the jury.

We will first consider the contention that petitioner's constitutional rights were violated by the action of the trial justice in proceeding with the trial in his absence. It is well settled that one accused of a crime is entitled to be present at every stage of the trial with full opportunity for defense. *Ponzi* v. *Fessenden*, 258 U. S. 254.

The requirement that a defendant be present in person during a trial for a felony is of ancient origin based upon the necessity for his presence when criminal guilt was de-

cided by ordeal or by battle. Goldin, Presence of Defendant at Verdict, 16 Colum. L. Rev. 18. Further, until comparatively recent times an accused in a criminal suit was not represented by counsel. *Powell* v. *Alabama,* 287 U. S. 45, 60; 3 Blackstone, Commentaries *25. The right to confront one's accusers and to be present during all stages of a trial is now guaranteed by article I, sec. 10, of the Rhode Island constitution and in federal cases by article VI of amendments to the federal constitution.

However, this constitutional right is primarily for the protection of the accused and is in the nature of a privilege extended to the accused which in a noncapital case he is free to assert or waive as to him may seem advantageous. In *Diaz* v. *United States,* 223 U. S. 442, the court stated at page 455: "But, where the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present."

In the case of *State* v. *Greene,* 74 R. I. 437, this court considered the effect on her constitutional rights of defendant's absence from a portion of the trial. In that case the defendant, who had been charged with murder and was in custody during the trial, had not been promptly returned to the courtroom after a recess. Her absence was noted within a minute or two and she was conducted to the courtroom where the court reporter, reading from the record in the defendant's presence, related what had taken place during her absence. This court found no violation of her constitutional rights, and at page 449 of the opinion stated: "We agree with the general principle that an accused is entitled to be present in the courtroom at all stages of the trial when charged with a criminal offense. This right is

precious and should be enforced, but it should be kept within the limits of reason and common sense by sound judicial interpretation."

In our opinion it is significant that this court without comment has passed upon the effect of the absence of the accused at the taking of a view by the jury, *State* v. *Congdon,* 14 R. I. 458, and the receiving of a verdict from the jury in the absence of the accused, *State* v. *Guinness,* 16 R. I. 401. In neither case was it held that such absence constituted ground for a new trial.

In the instant case there is no contention that the absence of petitioner from his trial was anything other than voluntary, and therefore under the rule laid down in *Diaz* v. *United States, supra,* such absence constituted a waiver of his constitutional right to be present. It is our further opinion that in view of our holding in *State* v. *Greene, supra,* we would be giving the right an unreasonable and unwarranted interpretation if we were to hold that the constitution permitted one accused of a criminal offense, who was free on bail during his trial, by the simple expedient of absenting himself therefrom to thwart justice and defy the courts. We are also of the opinion that the action of the trial justice in charging the jury and accepting a verdict from them in the absence of petitioner was not, in the circumstances, a violation of the pertinent constitutional right and that this ground for the issuance of the writ is without merit.

The petitioner further challenges the legality of his detention on the ground that there was error in the refusal of the trial justice to permit him to examine the jury on the question whether any member thereof had knowledge concerning the news item published on February 4, 1958. The petitioner makes a twofold argument contending, first, that the denial of his motion constituted an abuse of judicial discretion on the part of the court; and second, that the material published was prejudicial to his right to an impartial trial and the refusal to permit inquiry as to the

jury's knowledge thereof was a denial of due process under the fourteenth amendment to the federal constitution.

Through his motion petitioner sought to accomplish an interrogation of the jury on the question of whether after they had been impaneled and were in the course of hearing testimony any of them had become aware of the publication and its contents. This is not a request to poll a jury as that procedure has long been understood in this state. The polling of a jury ordinarily means making inquiry whether each juror assented and still assents to the verdict returned by that jury, and it is a matter within the sound judicial discretion of the trial court. *State* v. *Sousa,* 43 R. I. 176.

So far as we are aware, this court has never passed upon the propriety of such a motion as petitioner made. The procedure involved therein has been considered by appellate courts in other jurisdictions, and the resultant decisions clearly disclose a unanimity of opinion that such a motion may be properly made and, when made, it is directed to the sound judicial discretion of the court. See Anno., 15 A.L.R. 2d 1152. We are persuaded that this viewpoint is consistent with the requirements of justice and should be the law in this state. But permission to so interrogate juries should be granted sparingly because of its tendency to erode the right of a defendant to have a fair and impartial trial on the issue of whether he is guilty of the crime for which he is being tried. It is fundamental that an impartial trial is one in which the jurors reach a verdict upon a consideration of only those matters that were introduced in evidence during the trial, and matters not so introduced should not be brought to their attention through such an interrogation.

In most cases in which it has been held that a denial of a motion to interrogate the jury did not constitute an abuse of discretion, the reviewing court has given emphasis to the fact that the trial court had instructed the jury to avoid

reading newspaper accounts concerning the crime or the trial and in reaching a verdict to disregard matters not in evidence. It appears to be held generally that the giving to the jury of an appropriate cautionary instruction is sufficient to secure their impartiality and to warrant a finding that the denial of the motion to interrogate did not constitute an abuse of discretion. *State* v. *DeZeler,* 230 Minn. 39; *State* v. *Bentley Bootery, Inc.,* 128 N.J.L. 555; *People* v. *Phillips,* 120 Cal. App. 644.

It is our opinion, however, that such a cautionary instruction will be sufficient to cure the adverse effect of a publication made during a trial only in a situation where the publication is not inherently prejudicial to the defendant's right to a fair and impartial trial. But where the publication so made is inherently prejudicial to his right to a fair trial, its adverse impact upon that right cannot be cured by the mere giving of a cautionary instruction to the jury. As was aptly said by Mr. Justice Jackson in the case of *Krulewitch* v. *United States,* 336 U. S. 440, at page 453: "The naive assumption that prejudicial effects can be overcome by instructions to the jury, * * * all practicing lawers know to be unmitigated fiction."

With this in mind, we turn to petitioner's contention that the trial justice, by refusing to permit his counsel to interrogate the jury as to whether they had knowledge of the publication, denied him due process within the fourteenth amendment to the federal constitution. This argument, as we understand it, is predicated on petitioner's assertion that the publication was "highly inflammatory," an expression that we assume means he asserts the publication was inherently prejudicial to his right to a fair trial. We do not dispute that such a contention could well be meritorious in a situation where there was a question as to the inherent prejudice in the publication. We can conceive of a situation in which such a publication made during a trial could be so inherently prejudicial to a defendant's right to a fair

trial that it could not be reasonably assumed that a jury who had knowledge thereof would be capable of giving a defendant a fair and impartial trial. Consequently, denying him an opportunity to ascertain whether the jurors had such knowledge would make his right to a fair trial illusory.

Courts are beginning to demonstrate a tendency to take a realistic approach to situations of this kind. In its decision in the case of *Delaney* v. *United States*, 199 F.2d 107, the United States Court of Appeals for the First Circuit considered the denial of a defendant's motion for a continuance of his trial on the ground that adverse publicity concerning him and the offense with which he was charged had not subsided at the time set for trial. The court, finding that the publicity was adverse and damaging, held that the trial court committed reversible error in denying the motion on the apparent ground that the defendant could not have a fair and impartial trial in the circumstances.

But in the circumstances here we are not confronted with that issue. The publication, in our opinion, was not so inimical to the defendant's rights as to make it unreasonable to assume that he could have a fair trial. We reiterate that the right of a defendant who is charged with the commission of a crime is to have a fair and impartial trial on the issue of his guilt or innocence with respect to the commission of that crime. For such a publication to be so inherently prejudicial to the defendant's right as to impair a juror's ability to be fair and impartial by reason of mere knowledge of it, the publication would necessarily have to impinge directly upon that right. The publication in the instant case does not have that effect. There was nothing in such publication that charged petitioner with the commission of the crime for which he was being tried, nor is there any recital therein of facts which if in evidence would be probative of his guilt. We cannot say that the publication was inherently prejudicial to petitioner's rights.

Because we reach this conclusion concerning the nature of the publication, the question whether the denial of the petitioner's motion to interrogate the jury concerning it was violative of his right to due process is not before us, and in the circumstances here, an appropriate cautionary instruction having been given, we are unable to say that the denial of that motion constituted an abuse of the trial justice's discretion. The second ground urged by the petitioner for the issuance of the writ is likewise without merit.

The petition is denied and dismissed, the writ of habeas corpus heretofore issued is quashed, and the petitioner is remanded to the custody of the respondent.

*Leo Patrick McGowan, Helen M. MacGregor,* for petitioner.

*J. Joseph Nugent,* Attorney General, *Raymond J. Pettine,* Assistant Attorney General, for respondent.