405 A.2d 1211.

STATE OF RHODE ISLAND *vs.* IRA HOLLAND.

SEPTEMBER 5, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

BEVILACQUA, C.J.   The defendant, Ira Holland, was convicted of the crime of rape by a jury in the Providence County Superior Court pursuant to the provisions of G.L. 1956 (1969 Reenactment) §11-37-1. From this judgment of conviction, the defendant appeals.

At the trial, the following testimony was elicited. The complaining witness, Annie Gonsalves, testified that at

approximately 6:30 p.m. on December 31, 1975 she was walking home after parking her car. According to Mrs. Gonsalves, a black male grabbed her from behind on Carrington Avenue and dragged her up the stairs of the Martin Luther King School where he sexually assaulted her. During the assault, which lasted approximately one-half hour, Mrs. Gonsalves' clothing was torn and her eye-glasses, which fell to the ground, were broken. After the assailant released her, she ran to Camp Street, hailed a passing car, and asked to be taken to the Miriam Hosptial.

While riding along Camp Street, Mrs. Gonsalves gave the driver, Warren Dreher, a description of her assailant by detailing the clothing he was wearing and generally describing his physical characteristics. As they passed a pedestrian on the corner of Camp and Cypress Streets, Dreher slowed his vehicle, noticing that the individual fit the description of the young man described by Mrs. Gonsalves. He then asked her if that individual was the person who had attacked her, and Mrs. Gonsalves responded that he was the same man. Both Dreher and Mrs. Gonsalves watched the man until he turned into the courtyard of an apartment building in the area.

Two days following the attack, Mrs. Gonsalves went to the Providence Police Station to view a lineup consisting of four individuals. At that time, Mrs. Gonsalves identified Vincent Pope as the man who had assaulted her. Dreher was also asked to view the lineup. Although he stated that one individual in the lineup looked similar to the man he saw on Camp Street the night Mrs. Gonsalves was attacked, he did not identify anyone specifically at the lineup.

After the lineup, Mrs. Gonsalves left the police station with her son and went to a bank at the University Plaza. While standing in line, Mrs. Gonsalves testified that she recognized defendant, whom she saw in the bank, as the man who had attacked her; she based her identification upon his facial characteristics, physical build, and the fact that he was wearing the same clothing he wore the night of the incident.

Mrs. Gonsalves further testified that she asked defendant his name, where he lived, and his activities the night of December 31, 1975. Following a short dialogue between the two, Mrs. Gonsalves stated that she left the bank to tell her son that her assailant was in the building. According to Mrs. Gonsalves, defendant then came out of the bank and ran down the street. Mrs. Gonsalves testified that defendant was chased down the street by a number of individuals and he was finally apprehended by members of the Providence Police Department. When she arrived at the scene of the arrest, defendant was handcuffed and lying on the ground. Mrs. Gonsalves testified that she call defendant a "dirty rat" at this time and that he responded, "I should have killed you * * *." (When he testified later, defendant denied making this comment, but it was corroborated by prosecution witness Edward St. Lawrence, a Providence police officer who participated in defendant's arrest.)

At the police station defendant was placed in a lineup with three other individuals who all wore clothing similar to that of defendant. Dreher viewed the lineup and identified defendant as the man he had seen on Camp Street and as the man identified by Mrs. Gonsalves as her assailant.

The defendant testified at trial that there was a confrontation at the bank between himself and Mrs. Gonsalves. He stated, however, that he did not run away from the bank following his dialogue with her. Instead, defendant testified that he left the bank and walked toward his home on Grandview Street before he was arrested.

The defendant also presented several alibi witnesses who testified that he was at a party at the home of a friend at the approximate time Mrs. Gonsalves was attacked. Further testimony was introduced by these witnesses to establish that defendant did not leave the party until 9 or 10 p.m.

The defendant also presented the testimony of Mrs. Gonsalves' optometrist, Barnum Moss, who stated that without glasses Mrs. Gonsalves vision was 20/200. He testified that Mrs. Gonsalves' vision was only 10 percent of normal without her glasses.

During the trial, defense counsel learned for the first time of the second lineup at which Dreher identified defendant. Once defense counsel became aware of the preindictment lineup, he immediately made a motion to suppress the lineup identification and moved for a voir dire hearing to determine whether the lineup was illegal and would thus taint the in-court identification. The trial justice denied the motion to suppress the lineup identification.

Following the close of testimony, the trial justice instructed the jurors on the law of the case and made a summary of some of the evidence. During this instruction, the trial justice reviewed the testimony of Mrs. Gonsalves concerning the location and condition of her eyeglasses following her assault.

The defendant raises two issues on appeal concerning the trial justice's denial of the motion to suppress the lineup identification and the requested voir dire hearing, and the trial justice's improper summary of Mrs. Gonsalves' testimony elicited at trial.

I

The defendant argues that the trial justice erred in his denial of the request for a suppression hearing, outside the presence of the jury, to inquire whether there may have been any improprieties in the pretrial lineup-identification procedure. The defendant further argues that the trial justice erred in his ruling that defendant's motion to suppress the evidence was untimely and that the motion should have been made before the trial had begun, pursuant to this court's holding in *State* v. *Maloney*, 111 R.I. 133, 300 A.2d 259 (1973) and Super R. Crim. P. 41(f).[1]

---

[1]Super. R. Crim. P. 41(f) provides, in pertinent part, that a motion to suppress evidence

"shall be made before trial in the Superior Court* * *."

The state argues that defendant was not entitled to a voir dire hearing on this issue because defendant did not file a pretrial motion to suppress the lineup identification. The state argues in the alternative that if the trial justice did err in failing to conduct a voir dire hearing, the error was harmless and therefore does not require reversal of the conviction.

A pretrial identification confrontation may be "so unnecessarily suggestive and conducive to irreparable mistaken identification" that it denies an accused due process of law. *Stoval* v. *Denno*, 388 U.S. 293, 301-02, 87 S. Ct. 1967, 1972, 18 L. Ed. 2d 1199, 1206 (1967). Pretrial confrontations must be scrutinized for their fairness. *United States* v. *Wade*, 388 U.S. 218, 227, 87 S. Ct. 1926, 1932, 18 L. Ed. 2d 1149, 1157 (1967).

Pretrial identification procedures may so taint in-court identification testimony as to render such testimony inadmissible on due-process grounds. *Simmons* v. *United States*, 390 U.S. 377, 383, 88 S. Ct. 967, 970, 19 L. Ed. 2d 1247, 1252 (1968); *Gilbert* v. *California*, 388 U.S. 263, 272, 87 S. Ct. 1951, 1956, 18 L. Ed. 2d 1178, 1186 (1967). For such identification procedure to amount to a due-process denial depends upon the totality of the circumstances surrounding it. *Simmons* v. *United States*, 390 U.S. at 385-86, 88 S. Ct. at 972, 19 L. Ed. 2d at 1254; *State* v. *Thornley*, 113 R.I. 189, 192, 319 A.2d 94, 96 (1974); *State* v. *Ouimette*, 110 R.I. 747, 768, 298 A.2d 124, 137 (1972).

In the instant case we are not considering whether the identification procedures were so tainted as to amount to a denial of due process. The initial question presented here is simply whether the trial justice should have conducted an evidentiary hearing outside the presence of the jury when defendant raised a question about the propriety of the pretrial lineup identification.

Previous rulings have established that where a timely and sufficient motion is made to suppress identification testimony on the ground that the testimony has been tainted by pretrial photographic identification procedures, the motion must be

heard and determined by the court outside the jury's presence in the same manner as any other motion to suppress evidence alleged to be inadmissible, because unlawfully obtained. *United States* v. *Allison,* 414 F.2d 407, 410 (9th Cir. (1969). In *State* v. *Porraro,* 121 R.I. 882, 404 A.2d 465 (1979), we adopted the rule that a defendant is entitled to an evidentiary hearing outside the presence of the jurors if he has made an initial showing of possible taint in a pretrial lineup-identification procedure. As a result of our holding in *Porraro,* we conclude in the instant case that defendant was entitled to a voir dire hearing on the motion to suppress the lineup identification.

The next issue before us is whether defendant waived his right to a hearing because he made his motion to suppress during the trial. In order to be timely, the motion, like all motions to suppress, should normally be made prior to trial since "to interrupt the course of the trial for such auxiliary inquiries impedes the momentum of the main proceeding and breaks the continuity of the jury's attention." *Nardone* v. *United States,* 308 U.S. 338, 342, 60 S. Ct. 266, 268, 84 L. Ed. 307, 312 (1939).

The record is clear in the instant case, however, that defense counsel was not aware of the existence of the alleged tainted lineup (at which Dreher identified defendant) until he read a transcript of defendant's bail hearing after the commencement of the trial. Evidence was also introduced at trial that indicated that the lineup was conducted through the use of a one-way mirror. Thus defendant himself might not have been aware of the fact that he was participating in a lineup at the time.

It is well settled that if a defendant can show that he was reasonably unaware that there was a tainted pretrial lineup identification, a motion to suppress the identification at trial should be entertained. *United States* v. *Cranson,* 453 F. 2d 123, 126 (4th Cir. 1971). The trial justice erred therefore when he failed to give defendant the opportunity during the trial to attack the admission of the in-court identification through the production of complete evidence about the circumstances under which the pretrial lineup was conducted.

Because no hearing was held by the trial court and no findings were made regarding the fairness of the out-of-court identification, we have an unsatisfactory record upon which to review the totality of the circumstances surrounding the identifications made by Dreher.

Following the procedure we adopted in *Porraro*, we shall remand the case to the Superior Court so that an evidentiary hearing can be conducted. If the trial justice finds that the pretrial identification did not violate due-process fairness standards, or that the in-court identification had an independent source, the judgment will be affirmed in conformity with our resolution of defendant's second ground of appeal. If the trial justice finds otherwise, defendant will be given a new trial.

In reaching this result, we are unwilling to conclude, as the state urges, on the record before us that the trial court's refusal to permit defendant to explore the circumstances surrounding the lineup identification by Dreher was harmless error beyond a reasonable doubt. *See Chapman* v. *California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705, 710-11 (1967). We are of the opinion that it is of paramount importance that an accused fully benefit from his constitutional due-process right as enunciated by the United States Supreme Court in *Wade, Gilbert* and *Stovall,* all *supra.*

## II

The defendant next argues that the trial justice committed reversible error when he commented on the evidence with respect to whether or not Mrs. Gonsalves was wearing her eyeglasses after she was assaulted. The defendant contends that the trial justice erred and invaded the province of the jurors when he improperly summarized the evidence and said:

> "I don't believe either lawyer ever said anything to Mrs. Gonsalves as to what she did with her glasses after she found them. Whether she put them on her face and wore them to the hospital, or whether she carried them in her hand."

The defendant asserts that Mrs. Gonsalves' undisputed testimony stated that she was not wearing eyeglasses at the time, when, while being driven to the hospital by Dreher, she identified the man on the street as her assailant.

Judicial comment on the evidence existed at common law, but while the federal courts have retained this power, in the overwhelming majority of states this function of the trial judge was taken from him by constitutional provision, statute or judicial decision. 9 Wigmore, *Evidence* §2551 (3d ed. 1940). In this state the right to summarize the evidence is controlled by statute. Section 8-2-38.[2]

This court has held, "both in civil and criminal cases, that where a trial justice chooses to comment upon evidence he must use caution to be completely impartial during the course of such comment." *State* v. *Harris*, 89 R.I. 202, 209, 152 A.2d 106, 110 (1959). We held in that case that the improper summarization of the evidence by the trial justice invaded the province of the jurors. *Id.*

In deciding whether a trial justice invades the province of the jurors, we have said that the language used must be judged as "ordinarily intelligent lay persons sitting in a jury box would have understood it, as they listened to it within the context of the whole charge at the close of the trial." *State* v. *Goff*, 107 R.I. 331, 339-40, 267 A.2d 686, 690 (1970) *citing State* v. *Hull*, 106 R.I. 285, 288, 258 A.2d 791, 793 (1969). If the court in instructing the jurors, comments on the evidence, he must clearly and unequivocally advise them that they are the sole judges of the facts and that they are the only ones who determine the weight of the evidence and the credibility of the witnesses. Furthermore, the trial justice may also inform the jurors that they are not bound by the comments of the court.

---

[2]G.L. 1956 (1969 Reenactment) §8-2-38 reads:

"In every case, civil and criminal, tried in the superior court with a jury, the justice presiding shall instruct the jury in the law relating to the same, and may sum up the evidence therein to the jury whenever he may deem it advisable so to do; but any material misstatement of the testimony by him may be excepted to by the party aggrieved."

After examining the trial justice's erroneous comments concerning Mrs. Gonsalves' eyeglasses in the context of the entire charge, we are of the opinion that his error does not require reversal of the conviction. Immediately preceding his remarks concerning Mrs. Gonsalves' eyeglasses, the trial justice said:

> "Now, a judge has to be extremely cautious in commenting on any evidence, and as I indicated earlier I don't want you people to think that I am interfering in any way with your conclusion. My recollection of the testimony, which is unimportant if it conflicts with yours * * *."

The trial justice had earlier cautioned the jurors that:

> "Nothing that I say by word or inflection, or gesture, is intended to influence your verdict in any respect whatsoever."

When the trial justice gave his instructions, he told the jurors in perfectly clear langauage that they were to make determinations about the facts of the case and that their determinations were to be made on the evidence as they recalled it. Thus, we believe that on the record before us the trial justice's comment, although erroneous, was cured by his cautionary language to the jurors and does not require a reversal of the judgment of conviction.

The case is remanded to the Superior Court for an evidentiary hearing in accordance with part I of this opinion.

*Dennis J. Roberts II*, Attorney General, *Alan R. Tate*, Special Assistant Attorney General, for plaintiff.

*William F. Reilly*, Public Defender, *Barbara Hurst*, Chief Appellate Attorney, *John A. MacFayden III*, Assistant Public Defender, for defendant.