**STATE**

v.

**Ira HOLLAND.**

**No. 80–247–C.A.**

Supreme Court of Rhode Island.

June 17, 1981.

---

Dennis J. Roberts, II, Atty. Gen., Alan R. Tate, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Paul E. Kelley, Asst. Public Defender, for defendant.

## OPINION

MURRAY, Justice.

The defendant, Ira Holland (Holland), was convicted by a Superior Court jury on a charge of rape, in violation of G.L. 1956 (1969 Reenactment) § 11–37–1.[1] The facts giving rise to the indictment against the defendant and his subsequent conviction on the charge are set forth in our opinion in *State v. Holland*, R.I., 405 A.2d 1211 (1979) (hereinafter referred to as *Holland I*), and only those facts pertinent to this appeal need be repeated here.

At defendant's trial in the Superior Court, Annie Gonsalves (Gonsalves) testified that on December 31, 1975, at approximately 6:30 p. m. she was walking on Carrington Avenue in Providence when a black male grabbed her from behind and dragged

her up the stairs of the Martin Luther King School where he sexually assaulted her. Following the assault, Mrs. Gonsalves ran to Camp Street, hailed a passing motorist, and asked to be taken to the Miriam Hospital. While en route to the hospital, Mrs. Gonsalves gave the driver, Warren Dreher (Dreher), a description of her assailant by detailing the clothing he was wearing and by describing his physical characteristics. As they passed the corner of Camp and Cypress Streets, Dreher noticed an individual who fit the description Mrs. Gonsalves had given him. Dreher slowed his vehicle and Mrs. Gonsalves identified the individual as her assailant. Both Dreher and Gonsalves then watched the man walk toward them down Camp Street until he turned into the courtyard of an apartment building. *See Holland I*, 405 A.2d at 1213.

Two days after the incident, defendant was placed in a lineup at the Providence police station with other black individuals, all wearing clothing similar to that of defendant. Dreher viewed the lineup and identified defendant as the man he had seen on Camp Street and as the man Mrs. Gonsalves had identified as her assailant.

During the course of the trial, defense counsel learned for the first time of the lineup at the Providence police station at which Dreher had identified defendant. Once defense counsel became aware of the preindictment lineup, he immediately made a motion to suppress the lineup identification and moved for a voir dire hearing to determine if the lineup was illegal and would thus taint Dreher's in-court identification of defendant. The trial justice denied both the requested voir dire hearing and defendant's motion to suppress the lineup identification.

On appeal to this court from the judgment of conviction entered against him, defendant raised two issues. He argued that the trial justice erred in his denial of the request to hold a suppression hearing, out-

---

1. At that time, G.L. 1956 (1969 Reenactment) § 11–37–1 was the statutory codification of the common-law crime of rape. The Legislature by P.L. 1979, ch. 302, § 2, subsequently repealed this section and substituted therefor a new statutory scheme setting forth various degrees of sexual assault and the penalties therefor.

side the presence of the jury, at which defendant could inquire whether there may have been any improprieties in the pretrial lineup-identification procedure. The defendant argued further that the trial justice committed reversible error when he improperly summarized the testimony of the complainant in giving his instructions to the jury.

In denying defendant's appeal as it related to the trial justice's comment on the complainant's testimony, we found that his comment, although erroneous, was cured by his instructions to the jury and that it did not require a reversal of defendant's conviction. In respect to defendant's other contention, however, we stated:

"In *State v. Porraro*, 404 A.2d 465 (R.I. 1979), we adopted the rule that a defendant is entitled to an evidentiary hearing outside the presence of the jurors if he has made an initial showing of possible taint in a pretrial lineup-identification procedure. As a result of our holding in *Porraro*, we conclude in the instant case that defendant was entitled to a voir dire hearing on the motion to suppress the lineup identification.

" * * *

"It is well settled that if a defendant can show that he was reasonably unaware that there was a tainted pretrial lineup identification, a motion to suppress the identification at trial should be entertained. *United States v. Cranson*, 453 F.2d 123, 126 (4th Cir. 1971). The trial justice erred therefore when he failed to give defendant the opportunity during the trial to attack the admission of the in-court identification through the production of complete evidence about the circumstances under which the pretrial lineup was conducted.

"Because no hearing was held by the trial court and no findings were made regarding the fairness of the out-of-court identification, we have an unsatisfactory

record upon which to review the totality of the circumstances surrounding the identifications made by Dreher." *Holland I*, 405 A.2d at 1215.

Following the procedure we adopted in *Porraro*, we remanded the case to the Superior Court with instructions that the trial justice conduct an evidentiary hearing concerning the circumstances under which Dreher's pretrial identification was made and with further instructions for the trial justice to make findings regarding the fairness of the pretrial lineup.[2] *Id.*

On remand, the trial justice set the matter down for hearing for October 22, 1979. When the case was called for hearing at approximately 3 p. m. on that day, defendant was not presented in the courtroom. After hearing arguments of defense counsel concerning why the hearing should be continued until defendant was present, the trial justice, over the objections of defense counsel, ordered the hearing to commence.

Warren Dreher and Detective Arnold Shone of the Providence police department testified for the state concerning the circumstances under which the lineup was conducted. When their testimony concluded the following day, the trial justice issued a warrant for defendant's arrest and continued the hearing until such time as defendant was apprehended in order to give him an opportunity to be present and to testify.

On November 29, 1979, defendant was arrested in Fall River, Massachusetts. The following day he was brought before the court. At that time, defendant told the court that he had not appeared on October 22 because he had not received notice of the hearing. When the evidentiary hearing resumed on December 17, 1979, defendant testified that on October 22 he came to the Providence County Courthouse at approximately 9:45 a. m. and went to a witness room on the fifth floor of the courthouse, where, he claimed, he was told by an uni-

---

**2.** In remanding the case, we noted that if the trial justice found that the pretrial identification did not violate due-process fairness standards, or that the in-court identification had an independent source, the judgment of conviction would be affirmed in conformity with the resolution of defendant's other issue on appeal. If the trial justice found otherwise, defendant would be given a new trial.

dentified person that the assistant public defender representing him was engaged in another trial and that defendant's hearing had been postponed. The defendant testified that he then left the courthouse and returned home. During his testimony, defendant also gave his account of the lineup conducted by the Providence police department.

Following the close of testimony and arguments of counsel, the trial justice rendered a bench decision in which he found that the lineup conducted by the Providence police at which Dreher had identified defendant was fairly conducted and conformed to due-process fairness standards. The defendant is now before us on an appeal from that determination by the trial justice.

In this appeal, defendant has briefed and argued several issues for our consideration. The additional facts involved in this appeal will be discussed when necessary for the resolution of those issues raised by defendant.

## I

The defendant first contends that the trial justice erred in conducting part of the evidentiary hearing in his absence. The defendant argues that the hearing in this matter was scheduled for 2 p. m. on October 22, 1979, but was not actually reached for hearing until 2:55 p. m. The defendant points out that the trial justice, after hearing brief arguments of counsel, commenced the hearing at approximately 3 p. m. The essence of defendant's argument is that in view of the severity of the sentence imposed on him, this short waiting period was inadequate. He asserts also that when he failed to appear at the hearing, the trial justice should have granted his attorney's request for á short continuance, which was especially warranted, he contends, in view of the fact that the crucial testimony of Warren Dreher, the state's chief witness, was taken in defendant's absence.

In *State v. Brown*, R.I., 399 A.2d 1222 (1979), we observed that a criminal defendant has the right, under both the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment, *Faretta v. California*, 422 U.S. 806, 818–19 & n.15, 95 S.Ct. 2525, 2532–33 & n.15, 45 L.Ed.2d 562, 572–73 & n.15 (1975), and Art. I, sec. 10, of the Rhode Island Constitution, *Trombley v. Langlois*, 91 R.I. 328, 332, 163 A.2d 25, 28 (1960), to be present at all stages of his trial when his absence may affect the fairness of the proceedings against him. *See Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934); *State v. LaChappelle*, R.I., 424 A.2d 1039 (1981). We have also stated that respect for this right of defendant to be present, however, should not permit a defendant who absents himself to halt proceedings against him. *Trombley v. Langlois*, 91 R.I. at 332, 163 A.2d at 28.

■ It is clear that a defendant's voluntary absence from a trial serves to operate as a waiver of the constitutional right to be present. In *State v. Brown*, however, we noted that

"[b]ecause of its constitutional dimensions, any waiver of the right to be present through a voluntary absence must amount to 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). *See Singletary v. United States*, 383 A.2d 1064, 1071 (D.C.App.1978). In *Taylor* the Supreme Court cited with approval the holding in *Cureton v. United States*, 130 U.S.App. D.C. 22, 27, 396 F.2d 671, 676 (1968) that a voluntary absence can be found when the defendant is aware both of the process taking place and of his right and obligation to be present, and has no sound reason for remaining away. [*Taylor v. United States*,] 414 U.S. [17] at 19–20 n.3, 94 S.Ct. [194] at 196 n.3, 38 L.Ed.2d [174] at 177 n.3 [(1973).] The voluntariness of any waiver may be determined by the 'totality of all the circumstances,' *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854, 862–63 (1973), including defendant's conduct. *Illinois v. Allen*, 397 U.S. [337] at 349, 90 S.Ct. [1057] at 1063, 25 L.Ed.2d [353] at 362 (1970)." *Id.* 399 A.2d at 1225.

 Indeed, in order to satisfy due-process requirements, a trial justice must make every effort to determine if a defendant has waived his right to be present. *See State v. Greene*, 74 R.I. 437, 449–50, 60 A.2d 711, 718 (1948). In *Brown*, we cited with approval *State v. Staples*, 354 A.2d 771, 776 (Me.1976), wherein the Supreme Judicial Court of Maine set forth guidelines to be followed by trial justices to determine whether a particular defendant who has absented himself from a trial has voluntarily waived his right to be present. In *State v. Brown*, R.I., 399 A.2d 1222 (1979), we stated that due process is satisfied when a trial justice

" '(1) makes sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary, (2) makes a preliminary finding of voluntariness (when justified), and (3) affords the defendant an adequate opportunity to explain his absence when he is returned to custody and before sentence is imposed.' " *Id.*, 399 A.2d at 1225.

After the trial justice has made an initial finding that the defendant's absence from a proceeding was voluntary, it is incumbent upon the defendant to come forward with evidence to rebut that finding. *Id.*

In the instant case, the trial justice made sufficient inquiry into the absence of defendant from the hearing. Relying upon defense counsel's representations that defendant had been informed of the date and time of the scheduled hearing, the trial justice made a preliminary finding that defendant was voluntarily absent from the hearing. Following the state's presentation of its evidence, the trial justice issued an arrest warrant to secure defendant's presence at the hearing and postponed a determination on the matter until defendant had been given an opportunity to explain the reasons for his absence. At that subsequent hearing, defendant was given an adequate opportunity to explain his absence. However, his explanation directly contradicted an explanation he had earlier offered to the court following his arrest in Fall River. It is clear nevertheless that the trial

justice chose not to believe either explanation. In his bench decision in this matter, the trial justice stated:

"After the case was remanded to this court, I got in touch with the prosecutor and with Mr. Paul Kelley, attorney for the defendant, and indicated that we would set the case down for a definite date which would be convenient to Mr. Kelley and to his client. It was agreed that Monday, October 22, 1979, would be a satisfactory date. Because it was a Monday, it was agreed that the judge and the lawyers would be occupied with other matters in the morning. Consequently, we set it down for 2:00 P.M. Now, Mr. Kelley made it clear throughout the hearing that he notified Mr. Holland to be present in this court at 2:00 P.M. on October 22, 1979. But based on the assurance from Mr. Kelley that he would be here and his client would be here, the State of Rhode Island went to great expense to bring the witness, Warren Dreher, who in the meantime has moved to San Francisco, California. Mr. Dreher was here to testify on October 22. Everyone was here except Ira Holland. The hearing continued into October 23, and since Mr. Holland had not put in an appearance, a warrant was issued for his arrest. He was apprehended several weeks later in Fall River, and he was brought into this courtroom on November 30, 1979. With him at the time was Assistant Public Defender Marvin Clemons. We indicated to Mr. Holland at that time that he had been expected to be present for the hearing on October 22, and I believe the transcript will show that he spontaneously stated that he did not show up on October 22 because he did not know about the hearing. That is a statement that just is not true.

"Now, he says that he did come to the courthouse on October 22, and instead of going to the Public Defender's office, he went to some witness room and spoke to some nameless stranger who he never saw before and has never seen since. I have to come to the conclusion that the

truth is not in Mr. Holland. I don't believe any of his statements. He has done everything possible to thwart the State's attempts to give him a hearing."

█ Thus, the defendant offered no credible evidence to the trial justice to rebut his finding that his absence from the hearing was voluntary and that, therefore, defendant had waived his constitutional right to be present. On appellate review, this finding by the trial justice is entitled to great weight and will not be disturbed unless it can be shown to us that the trial justice has misconceived or overlooked material evidence or was otherwise clearly wrong. *State v. Amado,* R.I., 424 A.2d 1057, 1063 (1981); *State v. Duggan,* R.I., 414 A.2d 788, 792 (1980). In light of the contradictory testimony offered by defendant as an explanation, we cannot say that the trial justice was clearly wrong in finding that defendant's absence from the hearing was voluntary.

## II

The second issue raised by Holland on appeal is that the trial justice erred in finding that the lineup at which Dreher identified him was fairly conducted. He contends that Dreher's in-court identification of him was tainted by a suggestive pretrial lineup conducted by the Providence police, thereby denying him due process of law.

In *Holland I,* R.I., 405 A.2d 1211 (1979), we discussed the pertinent considerations in determining whether a pretrial identification of an accused amounts to a denial of due process of law. There, we said that

"[a] pretrial identification confrontation may be 'so unnecessarily suggestive and conducive to irreparable mistaken identification' that it denies an accused due-process of law. *Stovall v. Denno,* 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967). Pretrial confrontations must be scrutinized for their fairness. *United States v. Wade,* 388 U.S. 218, 227, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149, 1157 (1967).

"Pretrial identification procedures may so taint in-court identification testimony as to render such testimony inadmissible on due-process grounds. *Simmons v. United States,* 390 U.S. 377, 383, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247, 1252 (1968); *Gilbert v. California,* 388 U.S. 263, 272, 87 S.Ct. 1951, 1956, 18 L.Ed.2d 1178, 1186 (1967). For such identification procedure to amount to a due-process denial depends upon the totality of the circumstances surrounding it. *Simmons v. United States,* 390 U.S. at 385–86, 88 S.Ct. at 972, 19 L.Ed.2d at 1254; *State v. Thornley,* 113 R.I. 189, 192, 319 A.2d 94, 96 (1974); *State v. Ouimette,* 110 R.I. 747, 768, 298 A.2d 124, 137 (1972)." *Id.* 405 A.2d at 1214.

The gravamen of defendant's arguments with regard to the fairness of the lineup is that the clothing he wore in the lineup and the clothing worn by the individual Dreher saw walking on Camp Street on the night of the incident were similar. The defendant argues that a lineup in which an accused is dressed in clothes fitting the description of a suspect violates an accused's due-process rights.

█ A witness' out-of-court identification of an accused is not admissible at trial if the identification procedure used was so unnecessarily suggestive and conducive to a substantial likelihood of misidentification that the accused was denied due process of law. *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401, 410 (1972). "It is the likelihood of misidentification which violates a defendant's right to due process * * *. Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Id.* at 198, 93 S.Ct. at 381–82, 34 L.Ed.2d at 410–11.

In *Neil v. Biggers,* the United States Supreme Court set forth several factors to be considered in deciding whether, under "the totality of the circumstances," a witness's out-of-court identification of an ac-

cused was reliable even though the confrontation procedure used was suggestive. There the Court stated that

"the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199–200, 93 S.Ct. at 382, 34 L.Ed.2d at 411.

██ Applying these factors to the facts of the instant case, we find that the record indicates that Dreher had more than an adequate opportunity to view the individual whom Mrs. Gonsalves had identified as her assailant. Dreher testified at the evidentiary hearing that when Mrs. Gonsalves identified the individual, Dreher pulled his car some distance down the street and sat with his car window rolled down, watching the individual walk slowly toward the car. He testified that the street was well lighted, which enabled him to see the suspect's face "really well." He testified also that he watched the individual walking toward the car for "at least a minute, maybe two." The witness stated also that he studied the suspect's face so that he could later describe him to police.

The record further reveals that following the incident, Dreher gave a general physical description of the individual he had viewed on Camp Street and a description of the clothes the individual wore. In addition, Dreher, who was employed by the Warwick school department as an art teacher, was able to draw a sketch of the suspect for the police.

The lineup in controversy here was conducted at police headquarters less than two days after Dreher had had the opportunity to view the suspect on Camp Street. At the evidentiary hearing, Dreher testified as follows:

"Q And drawing your attention to that photograph, Defendant's Exhibit A, can you tell us, counting the subjects by number going from left to right, one to four, who you selected?

"A I selected number one.

"Q You selected him. Was that person that you selected the same person that you had seen on Camp Street on the night in question, that Mrs. Gonsalves had pointed out or no?

"A Yes, that's why I selected him.

"Q And how certain were you of that fact when you made the selection?

"A I had a good, long look at him on the street. There was no mistake. That was the guy.

"* * *

"Q And can you tell us what caused you to select subject number one in the lineup?

"A His face.

"Q And the identification at trial, was that based on what you saw in the lineup or what you saw on December 31, 1975?

"A It was based on what I saw on December 31st."

Even assuming that the similarities between the clothing worn by defendant in the lineup and the suspect's clothing described by Dreher made the lineup somewhat suggestive, under "the totality of the circumstances" of the lineup we find that the witness's identification of defendant at the lineup was reliable and did not violate his due-process rights.[3] The trial justice,

---

**3.** We note that to place upon a person or to have a person in a lineup wear something similar to that worn by the perpetrators of a crime is not necessarily, in and of itself, unduly suggestive nor is it necessarily a denial of due process. For example, in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) the persons in the lineup in which the defendant appeared were required to wear

strips of tape on their face such as allegedly worn by the robber and each person was required to repeat words uttered by the robber at the time of the crime. Also, in *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the defendant was placed in a lineup in which each person was required to put on or take off certain articles of clothing. Each person in the lineup was also required to

therefore, did not err in denying defendant's motion to suppress the witness's testimony of his lineup identification of defendant. Because the lineup identification of defendant did not violate due process, the witness's in-court identification of defendant was not in any way tainted by the prior identification.

## III

■ The third issue raised by defendant in this appeal is that evidence of Dreher's identification of defendant in the lineup should have been suppressed at trial because defendant was not represented by counsel at the time the lineup was conducted, nor was he advised of his right to have counsel present. The resolution of this issue necessitates a brief discussion of the development of the law in this jurisdiction regarding a defendant's constitutional right to the presence of counsel at a police lineup.

The Supreme Court in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and in *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), first delineated the principle that a postindictment pretrial lineup at which a defendant is exhibited to identifying witnesses is a critical stage of a criminal prosecution, requiring the presence of counsel. The Court in these cases held that a postindictment lineup conducted in the absence of defendant's counsel denies defendant his right guaranteed by the Sixth Amendment[4] and renders an identification made at that time inadmissible.

Following the *Wade* and *Gilbert* decisions, there was a division among courts whether the right to counsel extended also to preindictment lineups. *Compare People v. Fowler*, 1 Cal.3d 335, 461 P.2d 643, 82 Cal.Rptr. 363 (1969), *and Commonwealth v. Guillory*, 356 Mass. 591, 254 N.E.2d 427

(1970), *with State v. Fields*, 104 Ariz. 486, 455 P.2d 964 (1969), *and Buchanan v. Commonwealth*, 210 Va. 664, 173 S.E.2d 792 (1970).

Several years after *Wade* and *Gilbert*, this court in *In re Holley*, 107 R.I. 615, 268 A.2d 723 (1970), was presented with the question of whether the constitutional right to the presence of counsel at a lineup embraced a pre- as well as a postindictment lineup. There we held that the right to counsel was applicable to all lineups, whether they were conducted before or after the institution of criminal proceedings against a defendant. Our holding in *Holley* was based upon our belief that although *Wade* and *Gilbert* concerned the right to counsel at a postindictment lineup, the Supreme Court had intended the rule enunciated in those cases to apply to all pretrial lineups. We noted that the language "post-indictment lineup" used by the Supreme Court in *Wade* and *Gilbert* was merely descriptive of the particular factual situations presented in those cases and not meant as a limitation of the rules announced therein.

Our speculation in *Holley* that the Supreme Court intended the right to the presence of counsel to be applicable to all lineups was ultimately proven wrong two years later in *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), wherein the Supreme Court held that an accused's Sixth and Fourteenth Amendment right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings— whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* at 689, 92 S.Ct. at 1882, 32 L.Ed.2d at 417.

In a plurality decision Mr. Justice Stewart explained the rationale for such a ruling:

repeat certain phrases that the witnesses had heard the robbers use. In neither case did the Supreme Court consider the lineup or anything the accused was required to do in the lineup to be unnecessarily suggestive or as being a denial of due process. The fact that the accused were required to repeat words spoken by the perpetrators of the crimes was held not to be viola-

tive of their Fifth Amendment privileges against self-incrimination.

4. The Sixth Amendment to the United States Constitution provides in pertinent part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have the assistance of counsel for his defense."

"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable.

"In this case we are asked to import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings. We decline to do so. Less than a year after *Wade* and *Gilbert* were decided, the Court explained the rule of those decisions as follows: 'The rationale of those cases was that an accused is entitled to counsel at any "critical stage of the *prosecution*," and that a post-indictment lineup is such a "critical stage." ' (Emphasis supplied.) *Simmons v. United States*, 390 U.S. 377, 382–383, 88 S.Ct. 967, 970–971, 19 L.Ed.2d 1247. We decline to depart from that rationale today by imposing a *per se* exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever." (Footnote omitted.) [Citations omitted.] *Id.*, 406 U.S. at 689–90, 92 S.Ct. at 1882–83, 32 L.Ed.2d at 418.

Recently, in *State v. Delahunt*, R.I., 401 A.2d 1261 (1979), we held that in light of the Supreme Court's ruling in *Kirby* that a defendant has no right under the Federal Constitution to the presence of counsel at a preindictment lineup, we would adhere to that decision and not interpret Art. I, sec. 10 of our state constitution to require assistance of counsel at any stage earlier than its federal counterpart.

The essence of defendant's contention is that the lineup here was conducted on January 2, 1976—less than two days after the alleged rape and long before he was indicted on that charge. He argues that the law in this jurisdiction at that time concerning the right to counsel at preindictment lineups was controlled by *In re Holley*. He asserts that since *Holley* extended an accused's right to counsel to preindictment lineups, the lineup conducted here, in the absence of counsel or without informing defendant of his right to counsel, denied defendant this constitutional right and that Dreher's testimony at trial concerning his identification of defendant in that lineup, therefore, should have been suppressed at trial.

The simple response to defendant's contention is that *Kirby* rather than *Holley*, was the controlling law in this jurisdiction at the time the lineup in controversy was conducted. Our opinion in *Holley* was based upon the right to counsel guaranteed under the United States Constitution. In holding, in *Holley*, that the principles enunciated in *Wade* and *Gilbert* were also applicable to preindictment lineups, we were, in effect, attempting to forecast how the Supreme Court would decide the question. The Supreme Court in *Kirby*, however, decided otherwise. There can be no question that this court is bound by *Kirby's* interpretation of the Federal Constitution.

Since under *Kirby* defendant had no right to counsel at a preindictment lineup, the lineup conducted here in the absence of counsel denied defendant no constitutional guarantees; therefore, Dreher's testimony relating to his identification of defendant at that lineup need not be suppressed.

## IV

■ Finally, defendant seeks dismissal of the indictment against him based upon the fact that the indictment was returned by an illegally constituted grand jury. His challenge of the composition of the grand jury is based upon our holding in *State v. Jenison*, R.I., 405 A.2d 3 (1979), in which we held that the total and arbitrary exclusion

of the college and university academic community from the grand-jury selection process impermissibly deprived a defendant of his due-process right to be indicted by an impartial grand jury drawn from a fair cross-section of the community. Later, in *State v. O'Coin*, R.I., 417 A.2d 310 (1980), we gave a limited retrospective application of our holding in *Jenison*.[5] We have subsequently stated that a defendant who wishes to challenge the composition of a grand or petit jury impaneled within the time frames established in *O'Coin* for the application of our *Jenison* ruling must do so by filing a motion prior to trial pursuant to Superior Court Rules of Criminal Procedure 12(b)(2) and (3).[6] That rule mandates that such a motion be made within twenty-one days after a defendant's plea is entered. If the motion is made prior to trial but more than twenty-one days after a plea is entered, it is within the sound discretion of the trial justice to consider the motion if it is filed within a reasonable time after entrance of a plea. *State v. Rohelia*, 428 A.2d 1064, 1065 (R.I., 1981); *State v. Morin*, R.I., 422 A.2d 1255, 1256 (1980) (quoting *State v. O'Coin*, R.I., 423 A.2d 1191 (1980) (petition for reargument)).

The defendant here was indicted by a Providence County grand jury impaneled well within the time frames established in *O'Coin*. Holland concedes, however, that he did not challenge the composition of that grand jury prior to trial by filing a Rule 12(b) motion to dismiss the indictment against him. As we have stated on many previous occasions, a defendant's failure to raise this challenge properly before trial and before the judgment of conviction is entered against him constitutes a waiver of this issue, absent a showing of actual prejudice as well as good cause to be relieved of the time requirements of Rule 12. *State v. Morin*, 422 A.2d at 1256 (citing *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973); *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357, *reh. denied*, 372 U.S. 950, 83 S.Ct. 931, 9 L.Ed.2d 975 (1963)). Neither actual prejudice nor good cause has been shown to us in the instant case. Thus we are precluded from considering the defendant's challenge to the composition of the grand jury in this appeal.

For the reasons stated, the defendant's appeal is denied and dismissed, the judgment of conviction entered against the defendant is affirmed, and the papers in this case may be remitted to the Superior Court.

SHEA, J., did not participate.

---

5. In *State v. O'Coin*, R.I., 417 A.2d 310 (1980), we said that our holding in *State v. Jenison*, R.I., 405 A.2d 3 (1979), would apply to cases of all defendants who were indicted by grand juries impaneled after January 21, 1975, the date of the Supreme Court's opinion in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), upon which our holding in *Jenison*, was premised, and those whose convictions had not yet become final by July 11, 1980—the date on which our opinion in *O'Coin* was filed. *Id.* 417 A.2d at 312.

6. Rule 12(b) of the Superior Court Rules of Criminal Procedure in pertinent part provides:

"(2) [D]efenses and objections based on defects in the institution of the prosecution or in the indictment, information, or complaint * * * may be raised only by motion before trial. * * * Failure to present any such defense or objection * * * constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver.

"(3) The motion shall be made no later than twenty-one (21) days after the plea is entered, * * * but in any event the court may permit the motion to be made within a reasonable time after the plea is entered.
" * * *."