**268 A.2d 723.**

## IN RE JULIO HOLLEY.

AUGUST 20, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

616

KELLEHER, J. This is an appeal taken by a juvenile from a decision of a justice of the Family Court adjudicating him to be a delinquent because of his alleged rape of a widow in Providence. Following the delinquency adjudication, the juvenile was committed to the Rhode Island Training School for Boys until he has attained the age of 21.

The prosecutrix testified that at about 4:20 a.m. on July 19, 1968, she was awakened from her sleep by a noise in the kitchen of her first floor tenement. She went to the kitchen where she encountered Holley and another "boy." Holley, she said, threatened her with a knife and forced her into the bedroom where he raped her. While

we see no necessity to set forth all the sordid details of what occurred thereafter, the record shows that the other intruder also raped the prosecutrix and robbed her of $22. The rapists told the widow that they would kill her if she reported this incident to the police. The police, however, were called and an investigation began.

The widow was summoned to police headquarters on two different occasions to view suspects who were placed in a lineup. She recognized no one in the first lineup. However, on August 8, 1968, she viewed a second lineup[1] by means of a one-way mirror and identified Holley as the knife wielder and the one who first raped her. Holley at this time was 16 years old. At the time of his appearance in the Family Court, he had turned 17.

Holley's defense was that at the time in question, he was in Baltimore, Maryland visiting his aunt. The trial justice, while acknowledging that the then prevailing burden of proof was "clear and convincing" stated that he was convinced "even beyond a reasonable doubt" that the juvenile had raped the widow.

While the trial justice is to be commended for his prescience in apparently anticipating the beyond-a-reasonable-doubt standard recently enunciated by the United States Supreme Court in *In re Winship*, 397 U. S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, the decisive issue in this appeal is whether a juvenile, who is suspected of committing an act that would constitute a crime if he were an adult, is entitled to the benefit of rules laid down by the Supreme Court in *United States* v. *Wade*, 388 U. S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and *Gilbert* v. *California*, 388 U. S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. The basic principle

---

[1]The lineup consisted of Holley and another youth. The second youth was described by the widow as being darker, heavier, taller and older than Holley. Mrs. Holley was present when her son was identified; however, neither mother nor son were informed of the right to counsel.

delineated in these two cases is that a lineup is a critical stage of a prosecution and denial of the right of counsel at a lineup renders the identification made at that time inadmissible.

In *Wade,* the United States Supreme Court held that a bank robbery conviction should be vacated because Wade had been required to appear in a post-indictment lineup without the presence of his counsel or a valid waiver thereof—which lineup was therefore conducted in violation of the defendant's sixth amendment rights; that certain *in-court identifications* were erroneously admitted unless it could be shown upon remand that they had an origin independent of the illegal lineup; and that, if the *in-court identifications* had no independent origin, the judgment should be reversed unless it was determined that their erroneous admission was harmless error. In *Gilbert,* for the same reasons as *Wade,* the Supreme Court ruled that a murder and armed robbery conviction should be vacated because of the admission, during the prosecution's case, of evidence of a post-indictment lineup in which the defendant had been required to appear without the presence of counsel or a valid waiver thereof. *Gilbert* further ruled that the admission of testimony of witnesses to the effect that they identified the petitioner in an illegal lineup was per se erroneous. The Court reasoned this latter rule was necessary in order to protect an accused's right to counsel at a critical time.

The issue in the case at bar has two facets: (1) Does the right to the presence of counsel at a lineup embrace a pre as well as a post-indictment lineup? And, assuming the answer to this question is in the affirmative, (2) Is a juvenile to be afforded the benefit of this rule?

While *Wade* and *Gilbert* speak of the right to counsel at a *post-indictment lineup,* we believe that the Supreme Court intended the rule laid down in those cases to be

applicable to other pre-trial confrontations. It is also our belief that this right to counsel belongs to juveniles as well as adults.

In holding that the right to counsel enunciated in the *Wade* and *Gilbert* cases is not limited to a lineup held after the return of an indictment, we find the following language in *People* v. *Fowler,* 82 Cal. Rptr. 363, 461 P.2d 643, to be sound and most persuasive:

> "Our reasons [for concluding that the *Wade* and *Gilbert* rules are not restricted in their application to a post-indictment lineup] are several. First, and perhaps most importantly, we find nothing in the reasoning of those opinions, and have ourselves been able to conceive of no reason, requiring that the rules should be so limited. * * * A lineup which occurs prior to the point in question may be fraught with the same risks of suggestion as one occurring after that point, and may result in the same far-reaching consequences for the defendant.
>
> "Second, we consider that the review of authorities and concluding language contained in part II of the *Wade* opinion manifests an intention to state principles governing *any* confrontation by one suspected of crime with the witnesses against him at trial. It is there indicated that the right at issue in all such confrontations — and therefore the right to be protected —is the defendant's 'most basic right as a criminal defendant—his right to a fair trial at which the witnesses against him might be meaningfully cross-examined.' (388 U. S. at p. 224, 87 S. Ct. at p. 1930.) After reviewing a number of cases wherein the protection of the indicated right required the presence of counsel or the valid waiver thereof, including Escobedo v. Illinois (1964) 378 U. S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. Arizona, *supra,* 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (in both of which the right to counsel attached in *pre*-indictment proceedings), the court concluded that the principle of those cases 'requires that we scrutinize *any* pretrial confrontation of the accused to determine whether

the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice.' (388 U. S. at p. 227, 87 S.Ct. at p. 1932.)

"'* * *

"Fourth, the case of Stovall v. Denno (1967) 388 U. S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, decided on the same day as *Wade* and *Gilbert,* gives some indication that the high court has no intention of limiting the operation of the *Wade-Gilbert* rules to post-indictment lineups. There a man was stabbed to death and his wife seriously wounded by an assailant who left certain objects at the scene. Defendant was traced through these objects and arrested on the following day. The wife underwent major surgery necessary to save her life, and on the day following defendant's arrest—prior to arraignment and before he could retain counsel—he was taken alone to her hospital room and identified by her as the assailant. The high court, in holding that the *Wade-Gilbert* rules were to have purely prospective application from the date of the decisions and that defendant (a habeas corpus petitioner) therefore could not benefit from them, strongly inferred that such rules would have governed the factual situation at bench if they had been given retroactive application or if the confrontation in question had taken place subsequent to the *Wade* and *Gilbert* decisions. (See also Rivers v. United States (5th Cir. 1968) 400 F.2d 935, 940.)

"Fifth and finally, we think it clear that the establishment of the date of formal accusation as the time wherein the right to counsel at lineup attaches could only lead to a situation wherein substantially all lineups would be conducted prior to indictment or information. We cannot reasonably suppose that the high court, recognizing that the same dangers of abuse and misidentification exist in all lineups,

would announce a rule so susceptible of emasculation by avoidance."

We conclude as did the court in *Fowler* that the phrase "post-indictment lineup" found in *Wade* and *Gilbert* is simply descriptive of the particular factual situations presented in those cases and it was not meant as a limitation on the operation of the rules[2] announced in those cases.

We think that once the right to counsel at a lineup has attached, the suspect is entitled to be informed of this and also be told that counsel will be appointed if necessary. Only if he is so informed can a suspect's election to proceed in the absence of counsel be deemed to be an intelligent waiver of his sixth amendment right.

Having determined that the right to counsel is applicable to all lineups, we now reach the issue of whether this right should be afforded a juvenile. The answer we suggest is patent. This past spring, Mr. Justice Brennan, in *In re Winship, supra,* said the same considerations which demand extreme caution in fact finding to protect the innocent adult apply as well as to the innocent child. Earlier in *In re Gault,* 387 U. S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, the United States Supreme Court held that although the fourteenth amendment did not require that the hearing conform with all the requirements of a criminal trial, an adjudicatory hearing must measure up to the "essentials of due process and fair treatment." One of the essentials of due process and fair treatment that *Gault* guaranteed

[2] For a contrary view see *Perkins* v. *State,* Fla., 228 So.2d 382; *People* v. *Palmer,* 41 Ill.2d 571, 244 N.E.2d 173. Many jurisdictions have held that the *Wade-Gilbert* holdings are not applicable to confrontations between a suspect and a witness occurring shortly after the commission of a crime or in other circumstances which necessitate a prompt identification. *Russell* v. *United States,* 408 F.2d 1280 (D. C. Cir. 1969); *Jones* v. *State,* Ind., 255 N.E.2d 219; *Commonwealth* v. *Bumpus,* 354 Mass. 494, 238 N.E.2d 343; *State* v. *Hamblin,* Mo., 448 S.W.2d 603; *State* v. *Satterfield,* 103 N. J. Super. 291, 247 A.2d 144. We are not attempting in this case to determine the extent to which *Wade-Gilbert* applies to pretrial confrontation which is separate and distinct from a formal lineup.

at the adjudicatory stage was the right to counsel. We think that the reasons advanced for the right to counsel at the adjudicatory stage are equally applicable to a pretrial lineup in a case where the juvenile may be charged with an act which would constitute a crime if he were an adult. The following language from *Gault* indicates the importance that the United States Supreme Court attaches to the right to counsel:

> "Just as in *Kent* v. *United States,* [citation omitted] we indicated our agreement with the United States Court of Appeals for the District of Columbia Circuit that the assistance of counsel is essential for purposes of waiver proceedings, so we hold now that it is equally essential for the determination of delinquency, carrying with it the awesome prospect of incarceration in a state institution until the juvenile reaches the age of 21." 387 U. S. at 36-37, 87 S.Ct. at 1448, 18 L.Ed.2d at 551.

Here, Holley has been found to be "delinquent" and as a result thereof, he faces the possibility of being confined at the Training School for close to four years. The boy's loss of liberty is just as serious to him as such a loss is to a convicted felon who is serving time at the Adult Correctional Institutions. In fact, there is a suggestion in the record that Holley, since his arrival at the Training School, has been administratively transferred[3] to the state

---

[3]G. L. 1956 (1969 Reenactment) §13-4-12 provides that any inmate in the Training School for Boys may be transferred to the Adult Correctional Institutions when, in the discretion of the assistant director of Social Welfare in charge of correctional services, this official believes the transfer "will best serve the purpose of reforming such inmate." P. L. 1969, chap. 134 authorized the Governor to reorganize all the agencies of the State of Rhode Island. Pursuant to this authority, the chief executive established the Department of Social and Rehabilitation Services. Today, an administrative transfer to the Adult Correctional Institutions is now authorized by an official of that department. The transfer statute also states that any juvenile transferred shall be kept separate and apart from adult inmates insofar as such separation is to be deemed in the best interest of the juvenile.

prison. As was so well pointed out in *Wade, supra,* 388 U. S. at 235-236, 87 S.Ct. at 1937, 18 L.Ed.2d at 1162:

> "The trial which might determine the accused's fate may well not be that in the courtroom but that at the pretrial confrontation, with the State aligned against the accused, the witness the sole jury, and the accused unprotected against the overreaching, intentional or unintentional, and with little or no effective appeal from the judgment there rendered by the witness—'that's the man.' "

Clearly, a juvenile suspected of an act that would constitute a crime, if he were an adult and facing several years of incarceration, should he be found to have committed the alleged act, has no lesser need for the assistance of effective counsel at the lineup than that of an adult charged with a similar act. If we were to deny the juvenile the right to counsel at this stage of such a proceeding, the right to counsel granted a juvenile by the United States Supreme Court in *Gault* would be rendered meaningless. There is no age limitation contained in the constitutional guarantee of due process.

All the grave potential for prejudice that a pretrial lineup without counsel may engender for an adult is no less grave for a juvenile. Clearly, the juvenile is as much entitled to the aid of counsel, and certainly in as much need of the aid of counsel, at this stage of the proceedings, as an adult.

Therefore, we now hold that, a juvenile who is suspected of doing an act that would constitute a crime if he were an adult has a right to counsel at a pretrial lineup that he is part of and, as an adjunct to this right, the juvenile and his parents are entitled to be informed that the juvenile has this right to counsel and, further, that one will be appointed if necessary. If the juvenile and his parents are not informed that such right has attached,

the election to proceed in the absence of counsel cannot be deemed an intelligent waiver of the accrued right.

We therefore hold that the lineup of August 8, 1968, wherein Holley was identified by the prosecutrix was a violation of his sixth amendment right to counsel and that there was no intelligent waiver of this right. Further, from the record before us, we cannot say that the admission of this evidence was harmless error within the meaning of *Chapman* v. *California,* 386 U. S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. In order to hold that the constitutionally erroneous admission of evidence of the lineup identification was "harmless" we must be convinced beyond a reasonable doubt that there is no reasonable possibility that the lineup identification contributed to the trial justice's finding that Holley raped the prosecutrix. (*Chapman, supra,* 386 U. S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 711.) We can make no such finding because the trial justice in his decision emphasized the fact that the prosecutrix did identify Holley in the second lineup as one of her assailants while she failed to make any identification when she viewed the first lineup.

While the prosecutrix said that she could identify Holley without the benefit of the lineup, the transcript does not permit us to make an informed judgment in this regard. There were no lights on in the victim's home during the time the intruders were there. Nevertheless, she said she recognized Holley in the kitchen because the dawn was breaking and the dawn's light enabled her to recognize the 16 year old. At another point in her testimony, the widow said that the kitchen blinds were closed but the blinds in the bedroom were a little bit open. Later, she said that she could not see him (Holley) very well in the dark but recognized his voice.

Because of the inconclusive state of the record, we believe the ends of justice will be best served by vacating

the adjudication of delinquency and remitting the case to the Family Court for a new hearing at which the state may have an opportunity to show that the victim's in-court identification of her assailant had a source independent of the improper lineup.

The appeal is sustained, and the case is remitted to the Family Court.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, *Scott K. Keefer,* Special Assistant Attorney General, for plaintiff.

*James Cardono,* Public Defender, *Benedetto A. Cerilli, Jr.,* Special Counsel to the Public Defender, for defendant.