COMMONWEALTH vs. JOHN T. FAY.

Plymouth. June 9, 1982. — September 7, 1982.

Present: ARMSTRONG, KASS, & SMITH, JJ.

*Identification. Evidence,* Admissions and confessions, Best and secondary, Other offense. *Practice, Criminal,* Sentence, New Trial, Mistrial. *Due Process of Law,* Transcript of trial.

In the circumstances there was no error at a criminal trial in the admission of evidence of the victim's identification of the defendant. [372-373]

There was no error at a criminal trial in the admission of a confession made by the defendant, who had just turned seventeen, after he was taken in custody and before his parents arrived where the defendant had been given Miranda warnings and indicated that he understood them and where the defendant had been given an opportunity to telephone his parents. [373-375]

The defendant in a criminal case was not prejudiced by sentencing which was advanced by one week and which occurred, over the defendant's objection, following a postverdict hearing on revocation of bail where defense counsel argued capably about sentencing and was familiar with the defendant's family, school, and criminal history. [375]

There was no error at a criminal trial in the prosecution's failure to notify the defense in advance that the original confession by the defendant had been lost and in the admission in evidence of a copy of the confession where there was no suggestion that the copy differed in any way from the original, that the defendant was prejudiced by the delay in authentication, or that the prosecution was aware at a material time prior to trial that the original was missing. [375-376]

A criminal defendant was not denied due process of law by a delay of a year in providing him with a trial transcript where the prosecution had not contributed to the delay and there was no showing of prejudice to the defendant by reason of the delay. [376]

The judge at a criminal trial was not required to declare a mistrial when a police officer, testifying about Miranda warnings and the defendant's understanding of them, remarked, "He had heard it before." [376]

INDICTMENT found and returned in the Superior Court Department on July 15, 1980.

Motions to suppress were heard by *Taveira*, J.

The case was tried before *Pierce*, J., and a motion for a new trial was heard by him.

*Bernard A. Kansky* for the defendant.

*Robert S. Sinsheimer*, Assistant District Attorney, for the Commonwealth.

KASS, J.  Toward dusk the victim was walking along a beach in Hull.  She noticed a young man in a yellow T-shirt who was clutching a "light colored thing."  He walked past her.  Then she had the sense that the man in the yellow T-shirt was stalking her and she picked up her pace.  The man came as close as about five feet, and she could see his face and hair.  Within a minute or two she was grabbed from behind, a yellow sheet was placed over her head, and she was raped.  She did not see the assailant at the time of the attack but marked his voice and manner of speech.  For his role in this episode the defendant was convicted on charges of rape and assault and battery.  He urges six grounds for reversal on appeal.  We affirm.

1. *Suggestive identification.*  The victim had been able to give the police a description of the man whom she had observed walking behind her just before she was attacked.  On the strength of that description, especially the yellow T-shirt, suspicion focused on the defendant because a police officer had seen him — wearing a yellow T-shirt — at a location and time proximate to where and when the crime occurred.  A police detective drove the victim to the defendant's house.  She sat in the police car, which was parked fifteen to twenty feet from the porch of the defendant's house.  That porch was well lit.  When the defendant stepped onto the porch to talk to the police detective, the victim said to a friend who had accompanied her, "That's him.  That's the bastard.  That's him."

When the detective came back to the car the victim told him at once that the man to whom he had been speaking on the porch was the man who had attacked her.  Upon return to the police station, the victim examined mugshots and picked out a photograph of the defendant.

As in *Commonwealth* v. *O'Neill, post* 978, 979-980 (1982), the facts describe a showup identification shortly after the crime has occurred, when memories are fresh, innocent suspects may be eliminated, and the investigation may be advanced. *Commonwealth* v. *Bumpus*, 354 Mass. 494, 500-501 (1968), cert. denied, 393 U.S. 1034 (1969). *Commonwealth* v. *Coy*, 10 Mass. App. Ct. 367, 371-373 (1980), and cases cited. No policeman was in the car when the victim first made her identification and it could hardly be said in such circumstances that there was coercive pressure on her to make an identification. See *Manson* v. *Brathwaite*, 432 U.S. 98, 116 (1977). Here the witness had a good look at the man behind her just before the attack; she gave the police a useful description; and she exhibited a high degree of certainty in the identification. In addition she supported her visual identification by a voice identification at the police station, made while the defendant was talking in another room out of the victim's sight. See *Stovall* v. *Denno*, 388 U.S. 293, 301-302 (1967); *Commonwealth* v. *Botelho*, 369 Mass. 860 (1976). Contrast *Commonwealth* v. *Moon*, 380 Mass. 751, 758-759 (1980).

2. *Validity of the pretrial confession.* Following his identification, the defendant, who had just turned seventeen, was arrested on a warrant. The arresting officer gave him the Miranda warnings, see *Miranda* v. *Arizona*, 384 U.S. 436, 478-479 (1966), which the defendant indicated he understood. At the time of his arrest, the defendant's mother was told that booking the defendant would take a while and that she and her husband could see their son later at the station. As to what followed at the police station, the judge at the suppression hearing found as follows: "Yannizzi [the police detective] and the defendant went into a room, and . . . the defendant was advised of his right to use the phone to call his parents, although he denies this. Yannizzi and the defendant were alone in the room . . . . [T]he defendant was interrogated before the parents arrived. The defendant contends that he was upset, crying and frightened of Detective Yannizzi, which I can accept as fact. I find,

however, that although he was upset and afraid, that his condition or state of apprehension did not reach the level that his statements were in any way coerced or that he was forced to make them and conclude on the evidence that his statements were made voluntarily." The judge also found that the defendant, although young, had previous experience with the Miranda warnings and understood their meaning, and that, nonetheless, he wrote out a statement of what happened which amounted to a confession. The judge had before him the defendant's school record which discloses that the defendant had done well at school and presumably possessed, at the least, normal intelligence.

On these facts, the judge, who heard and saw the witnesses, could correctly conclude that the defendant's will was not overborne. *Commonwealth* v. *Harris*, 364 Mass. 236, 242 (1973). The judge's assessment of the totality of the circumstances and his weighing of conflicting evidence are determinations which an appellate court will not lightly disturb. *Commonwealth* v. *Meehan*, 377 Mass. 552, 557 (1979). *Commonwealth* v. *Wilborne*, 382 Mass. 241, 249-252 (1981). *Commonwealth* v. *Tavares*, 385 Mass. 140, 144-145 (1982). Cases involving waiver of the privilege against self-incrimination by minors require special caution, *Commonwealth* v. *Cain*, 361 Mass. 224, 228 (1972), but there is no per se rule that a minor cannot waive his Miranda rights or that he must consult with an adult before a confession can be valid. See *Commonwealth* v. *Harris, supra* at 242, where the defendant was sixteen and had been in custody nearly forty-eight hours; *Commonwealth* v. *Tavares, supra* at 142-146, where the defendant was seventeen and had been arrested on prior occasions. See also *Commonwealth* v. *Andrade*, 8 Mass. App. Ct. 653, 655-656 (1979). The case is unlike *Commonwealth* v. *Cain, supra* at 226-229, where the defendant was fifteen, had no previous experience with police, made at best an ambiguous waiver of his rights, and where his father was denied access to him. Here the evidence was conflicting as to whether the mother

sought to accompany the defendant to the station and, in any event, the defendant was, before he made his statement, given an opportunity — which he rejected — to call his parents. The failure to read the Miranda rights to the defendant's mother could scarcely be error so long as they were read to the defendant and he understood them.

3. *Sentencing.* The defendant objects to his sentencing because it occurred, over his objection, following a postverdict hearing on revocation of bail. We have reviewed the record and it discloses that defense counsel argued capably about sentencing and was familiar with the defendant's family, school, and criminal history. Arguments on sentencing and a motion to revoke bail generally cover substantially similar ground. Defense counsel has not directed us to any fact or argument he was prevented from calling to attention because the sentencing procedures were advanced by one week. Nor was the sentence imposed, eighteen years at MCI, Concord, harsh. (Under such a sentence the defendant is eligible for parole in two years.) Finally, defense counsel had an opportunity, when he presented a motion to revise and revoke the sentence, to call any additional facts or arguments to the attention of the trial judge.

4. *The prosecution's failure to notify the defense in advance that the original confession was lost.* It developed at trial that the prosecution could not find the original confession and had only photocopy facsimiles. Detective Yannizzi testified that he could not find the original, that he had observed the defendant write out his statement and that the copy did not differ in any way from the original. So authenticated, the document was admissible. See *Old Colony Trust Co.* v. *Shaw*, 348 Mass. 212, 219 (1964); G. L. c. 233, § 79E; Liacos, Massachusetts Evidence 362-363, 370 (5th ed. 1981). There is no suggestion: that the copy differed in any way from the original; of any prejudice to the defendant by reason of his learning belatedly that the original was missing; or that the Commonwealth was aware at a material time prior to trial that the original was missing. Nor

was any contention made that it was necessary for the Commonwealth to prove affirmatively that it made copies of the defendant's statements in the ordinary course of business.

5. *Motion for a new trial.* (a) In connection with his motion for a new trial, the defendant urged that he was denied due process of law because it had taken a year to obtain the trial transcript. Compare *Rheuark* v. *Shaw*, 628 F.2d 297, 303 & n. 8 (5th Cir. 1980), cert. denied sub nom. *Rheuark* v. *Dallas County*, 450 U.S. 931 (1981). The delay is lamentable, as the trial judge forcefully remarked. But not every delay, even an inordinate one, violates due process. Although defense counsel requested the trial transcript in a timely fashion, he was less than assertive in prying it loose. The prosecution did not contribute to the delay, and there is no showing of prejudice to the defendant by reason of the delay. See *Barker* v. *Wingo*, 407 U.S. 514, 530 (1972).

(b) In the context of the motion for a new trial, the defendant argues that the judge erred in refusing to declare a mistrial when the arresting officer, describing how he gave the defendant his rights when arrested, testified: "[H]e [the defendant] said he did [understand the Miranda warnings]. He had heard it before." As a description of the defendant's comprehension of the warnings, his statement that he had heard it before was not irrelevant and not inadmissible because it also suggested the commission of another offense. *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269 (1982). Moreover the judge promptly ordered stricken the sentence about the defendant having heard the warning before. There was a reference by Yannizzi to mugshot books, but no testimony at the trial that the victim picked out the defendant's photograph. (The victim's selection of a picture of the defendant had been brought out at the suppression hearing.) There was minimal, if any, prejudice to the defendant, and certainly the judge acted within his discretion in denying the motion for a mistrial. There was no manifest necessity for a mistrial. See *Jones* v. *Commonwealth*, 379 Mass. 607, 615-622 (1980).

The judge was well within his discretion in denying the motion for a new trial. *Commonwealth* v. *Stewart*, 383 Mass. 253, 256-257 (1981). *Commonwealth* v. *Markham*, 10 Mass. App. Ct. 651, 651-654 (1980).

>                    *Order denying motion for a new*
>                    *trial affirmed.*
>
>              *Judgment affirmed.*