In re FRANCES J.
No. 80–446–A.

Supreme Court of Rhode Island.

Feb. 22, 1983.

Dennis J. Roberts II, Atty. Gen., Anthony F. DelBonis, Sp. Asst. Atty. Gen., for petitioner.

William F. Reilly, Public Defender, Barbara Hurst, Chief Appellate Atty., Providence, Paula Rosin, Asst. Public Defender, for respondent.

OPINION

WEISBERGER, Justice.

This case comes before us on appeal from an adjudication of delinquency entered in the Family Court by reason of an act that would have constituted murder if it had been committed by an adult. We affirm. The facts underlying the court's determination are as follows.

An eyewitness, Shirley Scott (Shirley), testified that on July 2, 1979, Cathy Rodriguez (Cathy), accompanied by another young woman, approached the door to Frances's apartment on Linden Street in Providence and knocked. In response to the knock, Frances opened the door wielding two knives and, without any preliminary conversation, stabbed Cathy. After the stabbing, Frances dropped the knives, which were retrieved by Shirley and hidden in a piano in Shirley's second-floor apartment. The victim staggered out of the house and into the middle of the street, where she fell. Shirley stated that the victim was unarmed at the time of this confrontation. Subsequently Shirley delivered the knives to the police.

Later that same day Frances was arrested at the home of a friend. Police officers testified that Frances's mother was brought into the interrogation room at the police

station where she was alone with her daughter for about five minutes. Thereafter, *Miranda* admonitions were read to Frances in the presence of her mother. Both the mother and Frances were asked if they understood her constitutional rights, and both answered that they did. Both signed a waiver-of-rights form in the presence of the officers. Frances then gave a statement admitting that she had stabbed the decedent.

At trial Frances testified in her own defense and stated that in fact Shirley had stabbed Cathy in the course of a dispute over Shirley's boyfriend. She went on to state that Shirley had then asked Frances to assume the blame for this homicide because she would be treated less harshly as a juvenile than Shirley would be as an adult. At the time of the commission of this crime, Frances was more than seventeen years of age but had not quite reached her eighteenth birthday (September 3, 1979). Frances stated that she had agreed and had subsequently given a full confession to the police because she did not realize that the victim had died. In the light of this evidence, the Family Court justice found Frances guilty beyond a reasonable doubt and adjudicated her to be a delinquent. She was sentenced to the Training School for Girls until her twenty-first birthday.[1] In support of her appeal, Frances raises four issues that will be dealt with in the order in which they are set forth in her brief.

The first issue raised is a contention that the Family Court justice erred in refusing to suppress Frances's confession. In support of this argument, Frances contends that her confession was not voluntary and her waiver not intelligent because the trial justice found as a fact that prior to the giving of the *Miranda* admonitions, Frances had no meaningful opportunity to consult with her mother in private. In fact, the trial justice found that the police officers had made every effort to call Frances's mother and that the mother had finally arrived at the station. He noted that the only persons who testified concerning the voluntariness of the statement were police officers. The trial justice summed up the findings as follows.

"[T]he police did everything humanly possible to be sure that they were complying with every mandate of the law. As a matter of fact, they, in my opinion bent over backwards to make sure that Frances clearly understood exactly what was going on, what the implications of having her rights read to her was, and those were reiterated by the actions of Captain Bathgate. He acknowledged that he said it once probably that he wanted Frances to tell the truth. This was after she had signed the [w]aiver [f]orm in the presence of the mother. * * * In the absence of any testimony to the contrary, it seems to me I would be hard pressed to find that the police had not sustained the burden that this girl was advised of her rights in

1. Frances became twenty-one years old on September 3, 1982. Thus, her period of incarceration at most would have been slightly more than three years for a crime that would have been punishable, if Frances had been an adult, by a minimum of ten years incarceration and a maximum of life imprisonment. General Laws 1956 (1981 Reenactment) § 11–23–2. It is therefore certainly true that the punishment accorded this juvenile for this severe crime was slight, indeed. It should further be noted that while at the Training School for Girls on March 12, 1980, Frances gave birth to her third child, that by June 1980 she was attending Rhode Island Junior College and began a series of jobs under a work-release program. Beginning in August of 1980 Frances was allowed to visit her home. On June 14, 1981, she failed to

return from one of these visits and was apprehended on June 24, 1981. She apparently continued her outside activities because on March 5, 1982, she delivered a fourth child, while still purportedly confined at the training school. Presumably by now even these minor restraints have been removed, and Frances is free to pursue her career unimpeded, save for adult probationary status arising out of two escapes and one assault while in the training school. We mention these facts in order to suggest that in cases involving juveniles who have almost reached their eighteenth birthdays and when they are charged with a serious offense of the type involved in the case at bar, the Family Court should seriously consider waiver of jurisdiction pursuant to G.L. 1956 (1981 Reenactment) § 14–1–7.

the presence of the mother. That they both understood clearly what [the] significance of the [r]ights [f]orm was. That they made a conscious decision. Intelligent[ly] and knowingly. That she voluntarily waived her rights."

In the face of this finding, Frances is able to assert only a somewhat novel argument concerning the supposed right of a juvenile to have a meaningful consultation with an adult prior to the making of a decision concerning waiver. She asserts that this right is based upon language of this court in *In re Holley,* 107 R.I. 615, 268 A.2d 723 (1970). *Holley* did not deal with an in-custodial interrogation but with the waiver of rights in respect to a confrontation for identification in a lineup.[2] In the course of the *Holley* opinion, this court did observe that in order for a juvenile to make an intelligent waiver of counsel, "the juvenile and his parents are entitled to be informed that the juvenile has this right to counsel and, further, that one will be appointed if necessary." *Id.* at 623, 268 A.2d at 728. Nowhere in the *Holley* opinion is there any statement concerning an opportunity for private consultation between the juvenile and his parent before the decision upon waiver is made. Indeed, in the most recent authoritative determination of a juvenile's constitutional rights by the Supreme Court of the United States, it has been held that a juvenile who was sixteen and a half years old and suspected of felony murder might waive his rights without any consultation with, or the presence of, an adult even though he had requested the presence of his probation officer. *Fare v. Michael C.,* 442 U.S. 707, 722–24, 99 S.Ct. 2560, 2570–71, 61 L.Ed.2d 197, 210–12 (1979). The Court went on to observe that a totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even when interrogation of juveniles is involved. *Id.* at 725, 99 S.Ct. at 2572, 61 L.Ed.2d at 212. The trial justice in the case at bar utilized such a totality-of-circumstances approach.

■ The police officers in this case not only met the requirements set forth in *Fare v. Michael C., supra,* but met the additional requirements suggested in *In re Holley, supra,* that the admonitions concerning the right to counsel be given in the presence of a parent. We are not prepared to place further requirements upon police officers beyond those suggested by the Supreme Court of the United States and by this court in *Holley.* Frances cites cases from two jurisdictions for the proposition that a juvenile may not waive the right to counsel and the privilege against self-incrimination without a meaningful opportunity to consult in private with a parent or an interested adult. *State ex rel. Dino,* 359 So.2d 586, 594 (La.1978); *In re K.W.B.,* 500 S.W.2d 275, 281 (Mo.App.1973). It is interesting to note that in *Dino,* a thirteen-year-old boy was admonished concerning his rights and questioned in the absence of his mother, who was left waiting in another room. In *K.W.B.,* a fifteen-year-old juvenile who suffered from dyslexia (an inability to read attributable to an impairment of the central nervous system) was questioned in the absence of his mother although she would have been willing to come to the station had she realized the seriousness of the charge. Although language in these cases may support Frances's contention, the facts upon which the decisions were rendered would probably have required suppression under the totality-of-circumstance test. The protection given to Frances's rights in the case at bar vastly exceeds those afforded in *Dino* or in *K.W.B.* We are therefore not per-

2. The specific holding of *In re Holley,* 107 R.I. 615, 268 A.2d 723 (1970), has been overruled by *State v. Delahunt,* 121 R.I. 565, 401 A.2d 1261 (1979), as a result of the opinion of the Supreme Court of the United States in *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The later cases held that there was no right to counsel at a confrontation for identi-

fication prior to the commencement of adversary judicial proceedings. *Id.* at 689, 92 S.Ct. at 1882, 32 L.Ed.2d at 417; *State v. Delahunt,* 121 R.I. at 570–71, 401 A.2d at 1264–65. This overruling of the holding of *Holley* has no effect upon the principle for which it is cited in the case at bar.

suaded by either of these cases to modify our present adequate rule.

In the case at bar, the trial justice's refusal, based upon persuasive and uncontradicted testimony, to suppress the confession was amply supported by overwhelming evidence and more than met the standard of review set forth in *State v. Killay,* R.I., 430 A.2d 418 (1981); *State v. Espinosa,* 109 R.I. 221, 283 A.2d 465 (1971); and *State v. Leavitt,* 103 R.I. 273, 237 A.2d 309, *cert. denied,* 393 U.S. 881, 89 S.Ct. 185, 21 L.Ed.2d 155 (1968). As a consequence, we are of the opinion that the decision of the trial justice on the motion to suppress was certainly not clearly erroneous.

The second issue raised by Frances is based upon the contention that the Family Court justice committed error in refusing to grant her motion *in limine* restricting the cross-examination of Frances's mother should she take the stand in support of her daughter's motion to suppress. This argument is premised upon the suggestion that this court should adopt a parent-child testimonial privilege. Such a privilege has thus far been recognized by some courts in two jurisdictions.[3] She further suggests that unlike other privileges, this privilege should be used not only as a shield but as a sword.

Even such a well-recognized privilege as the constitutional right against self-incrimination is waived if an accused takes the stand in his or her own defense. "His voluntary offer of testimony upon any fact is a waiver as to *all other relevant facts* because of the necessary connection between all." 8 Wigmore, *Evidence* § 2276 at 459 (McNaughton rev. 1961); *see McCormick's Handbook of the Law of Evidence* § 122 at 278 (2d ed. Cleary 1972). In commenting upon the waiver of privilege by a witness, Mr. Justice Frankfurter observed:

"Such a witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all. He cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute. It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self disclosure but a positive invitation to mutilate the truth a party offers to tell." *Brown v. United States,* 356 U.S. 148, 155–56, 78 S.Ct. 622, 627, 2 L.Ed.2d 589, 597 (1958).

Thus, we are faced with a contention that the trial justice should not only have created a new privilege but also have implemented this privilege by cutting off cross-examination in advance by a motion

---

**3.** The parent-child testimonial privilege is recognized only by the federal district court of Nevada and by certain intermediate and nisi prius courts in New York. *See In re Grand Jury Proceedings,* 51 U.S.L.W. 2437 (D.Nev. Feb. 1, 1983); *People v. Harrell,* 87 A.D.2d 21, 450 N.Y.S.2d 501 (1982); *People v. Fitzgerald,* 101 Misc.2d 712, 422 N.Y.S.2d 309 (1979); *In re Donna T.,* 115 Misc.2d 760, 454 N.Y.S.2d 658 (Fam.Ct.1982).

The Chief Judge of the federal district court of Nevada based his recent decision upon the creation of a parent-child privilege by a Westchester County judge in *People v. Fitzgerald.* The judge in *Fitzgerald* purported to derive the privilege from dicta contained in *Application of A and M,* 61 A.D.2d 426, 403 N.Y.S.2d 375 (1978). In that case, which is cited by respondent, the appellate division in commenting upon the creation of a parent child privilege concluded:

"Nevertheless, although there are persuasive arguments to apply a privilege in these circumstances, we believe that the creation of a privilege devolves exclusively on the Legislature." 61 A.D.2d at 434–35, 403 N.Y.S.2d at 381.

The appellate division therefore recognized that regardless of the arguable merits of a statutorily created parent-child privilege, no such privilege existed under traditional case law. *See* Coburn, *Child-Parent Communications: Spare the Privilege and Spoil the Child,* 74 Dickinson L.Rev. 599, 600 (1970). Furthermore, in all of the cases in which the privilege has been recognized, the proponent of the privilege has sought to preclude the compulsion of testimony by a parent. In the case before us, on the other hand, respondent has sought to inhibit or truncate the cross-examination of her mother who had proposed to testify voluntarily.

*in limine* in purported compliance with our holding in *State v. Bennett,* R.I., 405 A.2d 1181, 1183 (1979) that a trial justice has discretionary power to grant such a motion. Further, trial counsel did not even give the trial justice an offer of proof, but instead filed a sealed offer of proof that was not to be opened until after the completion of proceedings in the case. This somewhat bizarre approach would have made it impossible for the trial justice to evaluate the relevant area of probable cross-examination and determine, in the exercise of his discretion, whether such a motion (even if the privilege was recognized) would have withstood waiver. This approach was tantamount to a failure to raise the issue in the trial court.

We respond to this barrage of novel and unsupported contentions by stating unequivocally that we do not deem this case an appropriate vehicle for the consideration of adoption of a new privilege and that, further, the presentation of the issue to the trial justice was so defective as to make the point ineligible for appellate review. *State v. Fogarty,* R.I., 433 A.2d 972, 974 (1981); *State v. Robalewski,* R.I., 418 A.2d 817, 825 (1980); *State v. Pope,* R.I., 414 A.2d 781, 786–87 (1980).

■ The third issue raised by Frances is an allegation of error on the part of the trial justice when he permitted the prosecution to impeach the testimony of a witness, Barbara Ross, by use of a prior inconsistent statement and then used such statement for the proof of the matter asserted. An examination of the record indicates that the witness did become hostile in the course of the presentation of her testimony and suggests that it was a proper exercise of discretion for the trial justice to allow impeachment of her testimony by a prior inconsistent statement of the witness. *State v. Vargas,* R.I., 420 A.2d 809, 812 (1980); *State v. Quattrocchi,* 103 R.I. 115, 123–24, 235 A.2d 99, 103–04 (1967). Further, it is apparent from a reading of the trial justice's decision on this point that he did not take into account the prior inconsistent statement for proof of the matter asserted. He stated unequivocally that "the statement was admissible only for purposes of impeaching her credibility * * *." He further stated that the statements did not "establish the truth of what was said, but only to note that Barbara Ross made these statements." Thus, the trial justice was correct in permitting the prior inconsistent statement to be introduced and was further correct in limiting the use of such statement to impeach the credibility of the witness. This argument is without merit.

■ The final issue raised by respondent is a suggestion that the trial justice impermissibly placed the burden of proof upon the respondent. An examination of the decision of the trial justice and of the record of the evidence presented inevitably leads to the conclusion that he determined appropriately that the prosecution had proven Frances's guilt in respect to every element of the charge beyond a reasonable doubt. The suggestion that he misapplied the burden of proof is supported only by selecting certain of his comments out of context. The trial justice stated that he did not believe Frances's testimony that Shirley did the stabbing because he found it inherently improbable. Part of the reason that he found this story inherently improbable was that there was no indication that there was any blood on Shirley. This was only one factor in his rejecting Frances's attempt to place the blame for the homicide upon Shirley, even though Frances had admitted the crime to the police. Frances's story in this respect would strain the credulity of any trier of fact. Nevertheless, the trial justice evaluated this testimony carefully with reference to the surrounding circumstances including the presence or absence of physical evidence. This procedure in no way shifted the burden of proof to the respondent.

For the reasons stated, the respondent's appeal is denied and dismissed, the adjudication of delinquency is affirmed, and the papers in the case may be remanded to the Family Court.