**In re KEAN.**
**No. 86–181–Appeal.**
Supreme Court of Rhode Island.
Feb. 10, 1987.

Philip M. Sloan, Jr., Donna M. DiDonato, Longolucco, Vinci & Sloan, Westerly, for plaintiff.

Edward H. Newman, Adamo & Newman, Westerly, for defendant.

## OPINION

FAY, Chief Justice.

In this Family Court case, the respondent, a 17½-year-old juvenile, was adjudicated wayward for having driven a motor vehicle while under the influence of intoxicating beverages, in violation of G.L.1956 (1982 Reenactment) § 31–27–2, as amended by P.L.1985, ch. 150, § 39. The respondent appeals, contending inter alia, that the trial justice erred in denying his motion to suppress the results of his breathalyzer test and in using a previously uncounseled conviction for a similar violation to impose an enhanced sentence. We affirm.

The facts of this case are not in substantial dispute. On the evening of December 16, 1985, Charlestown Police Officer Raoul Lefebvre (Lefebvre) responded to a call concerning an automobile accident on Route 2 about a mile south of the police station. Upon arriving at the scene, Lefebvre observed respondent, Kean, and another person standing by a car that had gone into an embankment and struck a tree. Lefebvre noticed that Kean's speech was slurred, that his gait was unsteady, and that he had alcohol on his breath. Believing him intoxicated, Lefebvre read him his rights.[1]

Lefebvre then conducted a field-sobriety test on Kean, asking him (1) to count forward from one to twenty and backward from twenty to one, (2) to do a one-legged stand, and (3) to perform a heel-to-toe walk. When Kean failed to perform any of these tests satisfactorily, Lefebvre took him to the police station to administer a breathalyzer test.

Prior to administering the test, at 10:50 p.m., Lefebvre read Kean his breathalyzer rights.[2] He then afforded Kean the opportunity to make a phone call. According to Lefebvre, he urged Kean to call his parents and then to call an attorney, both of which Kean refused to do.

Lefebvre ultimately spoke to Kean's father on the telephone, although it is unclear from the record who placed the call. The substance of the conversation is somewhat disputed. Lefebvre testified that when he told Kean's father what had occurred, the father showed no interest in being present at the station when the test was administered to his son. Kean's father testified at first that he "hoped" he had told Lefebvre that he would be coming down to the station and then more unequivocally stated that he said he would be there shortly.

At 10:57 p.m. Kean signed the breathalyzer consent form. According to Lefebvre, Kean's father called back eighteen minutes later to find out how his son was going to get home and Lefebvre suggested that he come down to take him to the

1. The rights form used at the scene of a driving-while-under-the-influence violation incorporates the *Miranda* rights and informs the violator of his or her right to be examined by a physician of his or her choice.

2. These rights incorporate the rights read at the scene and request the arrestee to submit to a breathalyzer test. In addition, they inform the arrestee of his or her right to have a physician administer a test in addition to the one to be administered at the station; of the availability of a telephone to call a physician and/or an attorney; of his or her right to refuse to submit to the test; and of the consequences of such a refusal under G.L.1956 (1982 Reenactment) § 31–27–2.1, as amended by P.L.1985, ch. 150, § 39, the implied-consent portion of the driving-while-under-the-influence statute. We note that since the time of Kean's violation, the Legislature has enacted a specific provision detailing the consequences to a juvenile of the refusal to submit to a breathalyzer test. *See* P.L.1986, ch. 420, § 1, codified as G.L. § 31–27–2.5.

hospital because he was complaining of a neck injury. Kean's father testified that he had called to remind the officer that his son was a minor and not to do anything before he arrived at the station.

After obtaining Kean's signature on the rights form, Lefebvre administered the breathalyzer test to him, the first phase of which revealed a blood-alcohol level of .27 percent. Approximately thirty-three minutes later, Lefebvre tested Kean's breath a second time, again revealing a blood-alcohol level of .27 percent.[3]

Sometime after the administration of the breathalyzer test, Lefebvre presented Kean with a document entitled "Waiver of Trial Within 30 Days," which Kean refused to sign. He was then released to the custody of his parents, who had arrived at the station.

The matter was heard before the Washington County Family Court on March 25, 1986. Before the hearing began, Kean brought a motion to suppress the breathalyzer results, contending that his waiver, absent the presence and consent of his parents, was not intelligent. The hearing justice reserved decision on this motion until further testimony was taken.

In a decision rendered on April 1, 1986, the hearing justice denied the motion to suppress, allowed the breathalyzer results

into evidence, and found Kean guilty of driving under the influence and wayward on that account. On April 11, 1986, noting that this was Kean's second violation of § 31–27–2, she suspended his license for one year and sentenced him to the Rhode Island Training School for Boys for six months.[4]

On appeal, Kean claims error in the trial justice's denial of his motion to suppress, her combination of the motion to suppress hearing with the hearing on the merits, her imposition of an enhanced sentence, and her imposition of a sentence in excess of that which he would have received had he been an adult.[5]

I

DENIAL OF THE MOTION
TO SUPPRESS

Section 31–27–2(c) controls the admissibility into evidence of the results of a breathalyzer test in a criminal prosecution for driving under the influence. *State v. Berker*, 120 R.I. 849, 857, 391 A.2d 107, 112 (1978) (analyzing predecessor to statute involved in this case, identical in its relevant terms). One of the conditions imposed upon the admissibility of such results is the consent of the defendant to the taking of the test.[6]

---

3. Under § 31–27–2(b), as amended by P.L.1985, ch. 150, § 39, a blood-alcohol concentration of 0.1 percent or more constitutes an automatic violation of the statute.

4. On November 19, 1985, Kean had also been found wayward for driving under the influence. Pursuant to § 31–27–2(d)(6)(b) a person under the age of eighteen years convicted of violating the statute for a second time

"shall be subject to a mandatory suspension of driving license for a period of one (1) year, and may in the discretion of the sentencing judge also be sentenced to the Rhode Island training school for a period of not more than one (1) year and/or a fine of not more than five hundred dollars ($500)."

5. This last claim of error merits little attention. Kean cites no authority for his contention that the imposition of a longer sentence upon a juvenile than upon an adult for a similar violation is error. Furthermore, under § 31–27–

2(d)(2) an individual over eighteen years of age convicted of a second violation of § 31–27–2(a) is subject to a mandatory sentence of not less than ten days nor more than one year in jail; whereas under § 1–27–2(d)(6)(b) an individual under the age of eighteen in the same circumstances is subject only to a discretionary sentence of not more than one year. The fact that the District Court may currently be imposing the minimum sentence upon an adult, as is argued by Kean, is irrelevant. If such is the case, the District Court is merely acting within the statutory bounds of its discretion, as the Family Court justice in the case at hand was acting within hers. We therefore find no error on the basis of this claim.

6. According to § 31–27–2(c):

"In any criminal prosecution for [operating a vehicle while under the influence of intoxicating liquor], evidence as to the amount of intoxicating liquor * * * in the defendant's

Kean contends that a juvenile whose personal liberty is at stake is entitled to the presence and counsel of his parents prior to consenting to a breathalyzer test, much as an adult is entitled to the presence of counsel in the same circumstances. As such, he continues, his consent to the administration of the breathalyzer test was invalid and the admission of the results into evidence, a violation of his due-process rights.

██ We first note that under both federal and state law an adult has no constitutional right to counsel at the breathalyzer stage of a driving-while-under-the-influence proceeding. The United States Supreme Court in *Schmerber v. California*, 384 U.S. 757, 760–66, 86 S.Ct. 1826, 1830–33, 16 L.Ed.2d 908, 914–17 (1966), held that the compulsory withdrawal of blood from a defendant suspected of driving while intoxicated does not trigger the privilege against self-incrimination or the concomitant right to counsel since the evidence so gathered is not testimonial in nature. In *United States v. Wade*, 388 U.S. 218, 227–28, 87 S.Ct. 1926, 1932–33, 18 L.Ed.2d 1149, 1157–58 (1967), the Court went further stating that preparatory evidence-gathering steps, such as scientific analyzing of fingerprints, blood samples, and the like are not "critical stages" of the proceedings at which an accused has a right to counsel. Applying the rule in *Wade*, bolstered by *Schmerber*, this court specifically determined that no constitutional right to counsel adheres at the moment of decision whether to submit to a breathalyzer test, even though civil or criminal penalties might flow from the re-

fusal to submit to it. *Dunn v. Petit*, 120 R.I. 486, 491–92, 388 A.2d 809, 811 (1978).

Nevertheless, Kean's contention regarding the invalidity of his consent for lack of parental involvement merits our attention as it presents an issue as yet unresolved by this court. When a constitutional right is at stake, its waiver must be knowing, intelligent, and voluntary. *State v. Proulx*, 419 A.2d 835, 839 (R.I.1980). Although the right waived in this instance is statutory and not constitutional,[7] we assume, without deciding, that its waiver must satisfy the same test and shall examine the criteria used in the constitutional arena to determine if Kean's waiver was intelligent and knowing absent the presence and consent of his parents.

The United States Supreme Court in *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), held that a juvenile who was 16½ years old and suspected of felony murder might waive his rights without any consultation with, or the presence of, an adult even though he had requested the presence of his probation officer. In *Fare* the Court held that the totality-of-the-circumstances approach used in determining the validity of an adult waiver in like circumstances is adequate to determine whether there has been a waiver even when the interrogation of juveniles is involved:

"We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The *totality approach*

---

blood at the time alleged as shown by a chemical analysis of the defendant's breath, blood or urine or other bodily substance shall be admissible and competent provided that evidence is presented that the following conditions have been complied with.

(1) The defendant has consented to the taking of the test upon which said analysis is made."

**7.** As already noted, neither the Fifth Amendment privilege against self-incrimination nor the Sixth Amendment right to counsel is triggered by the administration of a breathalyzer test. Although the compulsory administration

of a blood test does constitute a search within the meaning of the Fourth Amendment, it is an "appropriate incident" to an arrest for driving under the influence, and as long as it is conducted in a reasonable fashion, it is justified absent a warrant. *Schmerber v. California*, 384 U.S. 757, 766–72, 86 S.Ct. 1826, 1833–36, 16 L.Ed.2d 908, 917–20 (1966). Thus, where the *Schmerber* criteria are satisfied, as they uncontestedly are in this case, we have suggested that "the consent of the suspect is irrelevant to the lawfulness of [the administration of a breathalyzer test]." *State v. Locke*, 418 A.2d 843, 849 n. 3 (R.I.1980).

permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Id.* at 725, 99 S.Ct. at 2572, 61 L.Ed.2d at 212.

The majority of jurisdictions rely on the totality-of-the-circumstances test in deciding whether statements by a juvenile were given voluntarily, knowingly, and intelligently. *See, e.g., West v. United States,* 399 F.2d 467 (5th Cir.1968), *cert. denied,* 393 U.S. 1102, 89 S.Ct. 903, 21 L.Ed.2d 795 (1969); *United States v. Fowler,* 476 F.2d 1091 (7th Cir.1973); *People v. Lara,* 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202 (1967), *cert. denied,* 392 U.S. 945, 88 S.Ct. 2303, 20 L.Ed.2d 1407 (1968); *Interest of Stiff,* 32 Ill.App.3d 971, 336 N.E.2d 619 (1975); *State v. Ann Marie C.,* 407 A.2d 715 (Me.1979); *Commonwealth v. Fay,* 14 Mass. App. 371, 439 N.E.2d 855 (1982); *State v. Benoit,* 126 N.H. 6, 490 A.2d 295 (1985); *People v. Stephen J.B.,* 23 N.Y.2d 611, 298 N.Y.S.2d 489, 246 N.E.2d 344 (1969); *Commonwealth v. Williams* 504 Pa. 511, 475 A.2d 1283 (1984).

In many of these jurisdictions, the presence or absence of a parent or "interested adult" at the time of waiver is but one factor to be considered in determining its validity. *See, e.g., Commonwealth v. Fay,* 14 Mass.App. at 374, 439 N.E.2d at 858; *People v. Stephen J.B.,* 23 N.Y.2d at 616–17, 298 N.Y.S.2d at 495, 246 N.E.2d at 348; *Commonwealth v. Williams,* 504 Pa. at 521, 475 A.2d at 1288.

The courts adopting the totality-of-the-circumstances standard do so in the belief that the juvenile courts are equipped with the expertise and experience to make competent evaluations of the special circumstances involved in the waiver of rights by juveniles and should be permitted the discretion to do so. To require the presence of a parent or interested adult in every case in which a juvenile is in custody and informed of his or her rights, they reason, would be overly protective; would exclude from evidence juvenile statements that are, in fact, knowingly and voluntarily given; and would restrict law enforcement unnecessarily.

Although this court applies the totality-of-the-circumstances test with regard to adult waiver, see *State v. Amado,* 424 A.2d 1057, 1061 (R.I.1981), we have not as yet specifically adopted it with regard to juvenile waiver. Before the United States Supreme Court decided *Fare,* this court held that a juvenile had a right to counsel at a pretrial lineup and that as an "adjunct" to this right the juvenile and his parents were entitled to be informed that it had attached. "If the juvenile and his parents are not informed that such right has attached," we continued, "the election to proceed in the absence of counsel cannot be deemed an intelligent waiver of the accrued right." *In re Holley,* 107 R.I. 615, 623–24, 268 A.2d 723, 728 (1970).[8]

In our most recent case dealing with this issue, however, we cited *Fare* with approval and found the waiver of a 17½-year-old juvenile valid under the totality-of-the-circumstances test despite the fact that she had no meaningful opportunity to consult with her mother in private before waiving her *Miranda* rights. *In re Frances J.,* 456 A.2d 1174 (R.I.1983). In *Frances,* however, the juvenile's mother was present at the time the juvenile was advised of her rights, and we ruled that the requirements suggested in *Holley* were met thereby as well. *Id.* at 1176.

---

**8.** Although it has since been held that there is no right to counsel at a confrontation for identification prior to the commencement of adversarial proceedings, *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 417 (1972) and *State v. Delahunt,* 121 R.I. 565, 570–71, 401 A.2d 1261, 1264–65 (1979), the "adjunct" principle for which *In re Holley,* 107 R.I. 615, 268 A.2d 723 (1970), is cited in the case at bar is still in effect.

■ Presented as we now are with a fact pattern in which the juvenile's parents were not present at the time of waiver, we adopt the rationale expressed by the majority of jurisdictions and hold that the validity of a juvenile's waiver of his or her rights should be evaluated in light of the totality of the circumstances surrounding that waiver, and that the presence or absence of a parent or interested adult is but one factor to be considered in reaching that determination.

■ In the instant case, the Family Court justice applied the totality-of-the-circumstances test. She noted that Kean was 17½ years old at the time of his waiver and that he had had previous experience with the court involving an identical offense two months earlier. Electing to believe Officer Lefebvre's testimony, she found that Kean chose not to request his parents presence at the station, and that when contacted by Lefebvre, Kean's father showed no interest in coming to the station. Kean's refusal to waive his right to a trial within thirty days further convinced the court that his consent to the breathalyzer test was intelligently given since it indicated his ability to distinguish one form of waiver from another.

On review, this court will not overturn the findings of a trial justice on a motion to suppress unless they are clearly erroneous. *In re John N.*, 463 A.2d 174, 176 (R.I.1983). We find that the evidence in the record amply supports the trial justice's findings in this case and that it is more than sufficient to justify her decision to deny the motion to suppress.

## II

### COMBINATION OF THE MOTION TO SUPPRESS WITH THE HEARING ON THE MERITS

Kean contends that the trial justice erred in combining the hearing on the motion to suppress with the hearing on the merits because he was thereby denied his constitutional right to testify regarding the events

that had occurred in the police station. Had he taken the stand to do so, he argues, he would have been subject to cross-examination on the principal charge itself.

■ A review of the record indicates that Kean made no objection at the time of the judge's decision to merge the suppression hearing with the hearing on the merits. Ordinarily, a party who fails to assert specific objections at the trial level is deemed to have waived his or her rights on appeal. *State v. Long*, 488 A.2d 427, 432 (R.I.1985). However, when it can be shown that the alleged error rises to substantial constitutional dimensions, we shall entertain a review, provided that the failure to object does not constitute an intentional tactical bypass and the error complained of is not harmless. *State v. Amado*, 433 A.2d 233, 237 (R.I.1981). In determining the existence of a deliberate bypass, we have considered whether the issue raised involves a novel constitutional claim unappreciated by counsel at the time of trial. *Id.*

That a defendant in a criminal proceeding faces a choice between testifying on his or her own behalf and retaining the privilege against self-incrimination is certainly not a novel legal principle. *See McGautha v. California*, 402 U.S. 183, 215, 91 S.Ct. 1454, 1471, 28 L.Ed.2d 711, 731 (1971); *State v. Ahmadjian*, 438 A.2d 1070, 1076 (R.I.1981); *State v. Wallace*, 428 A.2d 1070, 1072 (R.I.1981). That this conflict is exacerbated when the failure to testify involves the loss of a perceived constitutional right is also not a novel proposition, having been addressed by the United States Supreme Court, the First Circuit, and this court. *See, e.g., Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (tension between right to testify regarding standing in support of a motion to suppress on Fourth Amendment grounds and privilege against self-incrimination at trial); *McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971) (conflict in unitary trial proceeding for capital crime, determining both

guilt and punishment, between defendant's right to remain silent regarding guilt or innocence and alleged right to plead his case on the issue of punishment); *Flint v. Mullen*, 499 F.2d 100 (1st Cir.1974) (tension between right to testify at deferred-sentence-violation hearing prior to trial and privilege against self-incrimination at trial); *Flint v. Howard*, 110 R.I. 223, 291 A.2d 625, *cert. denied*, 409 U.S. 1078, 93 S.Ct. 694, 34 L.Ed.2d 667 (1972) (same issue as *Flint v. Mullen, supra*).

■ Thus, Kean should have anticipated the conflict he now contends was caused by the merged hearing and should have objected to the merger at the time it was suggested by the judge. That he was aware of this potential conflict is evidenced by his election not to testify. Absent a proper objection, therefore, we cannot at this time review his claim of error.

Kean further contends that since the Family Court does not allow for jury trials, it was error for the same judge to hear both the motion to suppress and the case on the merits since the evidence regarding suppression might have prejudiced her with regard to her decision on the merits.

■ Again, no objection to this effect was made at the hearing. We take this opportunity to note, however, that it is standard practice in nonjury trials for the same judge to hear suppression issues and the case on the merits, a practice that is consistent with the superior judgment and understanding of the law that we expect a trial justice to possess.

In a recent case dealing with recusal, we suggested that a challenge that would be sufficient to excuse a juror for cause would not necessarily be sufficient to disqualify a judge. We noted that our system of justice is "based upon the assumption that judges, by education, training, and experience, are able to surmount the possession of information * * * which may well preclude a juror from rendering a fair and impartial verdict." *State v. Cruz*, 517 A.2d 237, 241

(R.I.1986). In the instant case, Kean contends that a judge is unable to do that which he or she often instructs a juror to do—namely, to consider certain evidence only as it pertains to a specific issue. If a juror can be relied upon to obey such instructions, it is safe to assume that a judge, by virtue of his or her "education, training, and experience," can be relied upon to do the same if the law requires him or her to do so. Kean's contention, therefore, that a judge might be prejudiced on the merits by evidence heard regarding suppression has no merit. *Cf. United States v. Grinnell Corp.*, 384 U.S. 563, 584, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778, 793 (1966) (alleged bias and prejudice, claimed to disqualify judge under 28 U.S.C.A. § 144, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his or her participation in the case.) *Accord United States v. Kelley*, 712 F.2d 884, 889 (1st Cir.1983).

## III

### IMPOSITION OF AN ENHANCED SENTENCE

Kean claims that at the hearing in November of 1985 for his first violation of § 31–27–2 he was not represented by counsel. He cites the United States Supreme Court decision in *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), for the proposition that a prior uncounseled misdemeanor conviction cannot be used under an enhanced-penalty statute to convert a subsequent misdemeanor into a felony with a prison term. Accordingly, he argues, his sentence to the training school, imposed under § 31–27–2(d)(6)(b),[9] an enhanced-sentence provision for a second violation of § 31–27–2 by a juvenile, was error.

Although we agree with Kean as to the substance of the holding in *Baldasar*, we disagree as to its effect upon this case. In *Baldasar*, the record of the first conviction

---

**9.** *See supra,* note 4.

indicated that the petitioner was not represented by a lawyer and did not formally waive his right to counsel. 446 U.S. at 223, 100 S.Ct. at 1585, 64 L.Ed.2d at 172. As such, that conviction, "invalid for purposes of imposing a sentence of imprisonment for the offense itself remain[ed] invalid for purposes of increasing a term of imprisonment for a subsequent conviction under a repeat-offender statute." *Id.* at 228, 100 S.Ct. at 1588, 64 L.Ed.2d at 175 (Marshall, J., concurring).

■ There is no evidence before this court, nor was there any before the Family Court, to indicate whether Kean waived his right to counsel in the November 1985 proceeding, other than the conclusory statement made by Kean's counsel at the sentencing hearing for the second violation to the effect that Kean was without counsel at the time of the first violation. At oral argument before this court, counsel indicated that he was unaware of whether a rights form had been signed. The nonexistence of waiver was Kean's burden to prove in order to contend that his case came within the scope of *Baldasar.* In the absence of such proof, his contentions have no merit.

Accordingly, the respondent's appeal is denied and dismissed, the adjudication of waywardness is affirmed, and the papers in the case may be remanded to the Family Court.